The opinion of the court was delivered by
Blanchard, J.
This action was brought to recover $3,000.00 with interest and protest fees. Defendant, a manufacturer of sugar from cane, drew a sight draft for that amount on Levert, Burguierres & Co., commission merchants in New Orleans, with whom he was doing business, carried the draft to the plaintiff bank where it was cashed or discounted. The commission merchants declined payment and the draft was duly protested for dishonor and non-payment.
Whereupon the cashier of the bank immediately visited the defendant at his sugar refinery, informed him of the dishonor of the draft, and requested that the matter be arranged and the draft protected. Nothing coming of this, and not satisfied with the situation, the bank, the following day, instituted this suit and invoked the writ of attachment in aid thereof.
The grounds of attachment are that the petitioner “verily believes and fears the defendant has disposed of, or is \about to dispose of, his property, or some part thereof, with intent to give an unfair preference to others of Ms creditors, and that he has just cause to fear he is about to convert his property into money or other evidences of debt with intent to place it beyond the reach of his creditors.”
The sheriff seized, under the writ, a lot of sugar in barrels, packed and ready for shipment, a. lot of sugar not yet packed in barrels, and twenty-five car-loads of cáne — all of the probable value of $5.000.00.
*1630 This property was seized at the sugar refinery of the defendant. The refinery itself was not seized, nor was any of its realty, plant, machinery, or paraphernalia.
Defendant does not resist the indebtedness charged, but contests the attachment and in the trial court moved its dissolution, averring no sufficient grounds therefor, falsity of the allegations upon which based, and charged malicious motive on part of the plaintiff in procuring the same.
He avers damages suffered by reason of the wrongful issuance of the writ, grouping the same under various heads, the amount aggregating $75,000.00, and prays judgment therefor in reconvention.
The judgment below was m lavor of the plaintiff for the amount claimed, maintaining the attachment, and rejecting and dismissing defendant’s demand in reconvention. He appeals.
The questions here presented for determination are (1) the legality of the issuance of the writ of attachment; (2) if found to have been unwarrantably issued, the damages, if any, defendant is entitled to judgment for.
I.
Did the plaintiff bank have grounds sufficient in fact and in law to warrant recourse to the writ?
We are constrained to hold that it did not.
The evidence shows that the defendant had been engaged for years in the sugar making business and that hd was so engaged in the season of 1898-9. He was not a grower of cane, but relied upon the surrounding cane growers for the cane manufactured into sugar at his mill. He was a purchaser of cane from them. His manufacturing plant was estimated to be worth about $70,000.00. His mill was running regularly at the time of the attachment and for weeks before. His credit was reasonably good. He owed debts, but was not insolvent. His reputation and character in the community and the business world were good. Levert, Burguierres’ & Co. were his merchants; he shipped his sugar to them for sale. He relied on them for advances of money in his business. They held a mortgage on his sugar refinery for $10,000.00. Besides, he had executed in their favor a -contract of pledge on the sugar and molasses he was to manufacture in the season of 1898-9, as additional security for the indebtedness, engaging himself not to sell, *1631 encumber or dispose of the same, or any part thereof, toi their prejudice, and to ship and consign the same to them in due course — the proceeds thereof to be applied by preference to the payment of the mortgage note.
This act was placed on record in May, 1898. The attachment took place late in December of that year. ITe had been in the habit of drawing drafts on his commission merchants. Plaintiff bank had, that season, cashed other drafts of his on them.
ITe had, from time to time, made shipments of sugar and molasses to them, and about the time the draft sued on was drawn he had shipped them quite a lot of sugar. It is true he had no funds to his credit with them and was still in their debt, but the fact that others drafts of his had been paid by them shows he was not entirely without warrant in drawing the draft in question.
When the draft was not paid and the cashier called upon him in reference thereto, the cashier’s statement of what occurred is, substantially, as follows: When he was asked in what way he could arrange the matter, he replied he did not understand why Levert, Burguierres & Co. refused to pay his draft as he had three days previously made them a shipment of sugar, the value of which was more than sufficient to pay the draft; that he thought they would pay it after he saw them; that possibly the sugar last shipped had not reached them, etc. The cashier answered, that may be, but the bill of lading had, and that upon this bill of lading the draft should have been paid. Asked in what manner he could arrange the matter, he replied, by making another shipment of sugar to the firm. But the cashier thought this unsatisfactory since the firm, just in receipt of a bill of lading for sufficient sugar to meet the draft, had not met it, and there was no good ground for believing that they would meet it upon a still further shipment of sugar, but would, rather, do as they were doing with the last shipment — apply its proceeds to the shipper’s own indebtedness to them. Asked what security or collateral he had to offer to tide matters over until he could arrange to meet the draft, he replied he had none.
Asked on cross-examination for a re-statement of the reasons which justified, in his behalf, the attachment, the cashier answered: “My fears were these: As Mr. Martin had told me he had shipped sufficient sugar on the 23rd of December to more than cover the draft given us, and that draft had not been paid, it occurred to me then that Martin *1632 must be heavily indebted to the firm of Levert, Burguierres & Co., and that if further sugars were shipped them they would apply the proceeds thereof to partly liquidating whatever indebtedness was due them by him, and in that event we could have recourse on nothing else.”
The bank knew at the time it received the draft that the defendant was shipping his sugar to the firm in New Orleans on whom the draft in question, and other previous ones which they had discounted, were drawn.
Defendant’s ^version of the interview between himself and the cashier the night before the attachment is, in substance, as follows: Does not recollect anything said about the shipment of sugar; told him there was sufficient sugar shipped to meet the draft; that if he would wait I would go the next day to New Orleans and endeavor to arrange matters so as to have the draft paid; he did not say whether he would wait or not, but next day as defendant was on his way to New Orleans, he met the sheriff on the road who served legal process upon him and then proceeded on to the factory and executed the attachment. Plis intention in going to New Orleans was to see his merchants and endeavor to arrange the trouble that had arisen.
While the record is burdened with much testimony, sifted down to its last analysis, it is found that Ithe only ground existing for the attachment was the fear that defendant would make other shipments of sugar to his merchants, who would apply the proceeds to the payment of what he owed them, and still refuse to meet the draft plaintiff held.
Considering the attitude of these parties to one another in a business way, this did not suffice to warrant the attachment.
The disposition and the proposed disposition of the sugar and molasses was in the usual course of business. It was consigned and to be consigned to defendant’s commission merchants, to whom it was pledged by act of public record long prior to the attachment, as was well known to plaintiff’s attorney at the!'time he advised the attachment. The bank knew all the time the sugar was going forward to Levert, Burguierres & Oo. It had repeatedly cashed other drafts for defendant on the firm, and when, in the conversation with the cashier after the protest, he expressed a purpose of sending forward other consignments of sugars to them, it evidenced no intent to give an unfair preference to them, nor intent to defraud his other creditors.
*1633 It gave no sufficient ground for the affidavit that he was disposing of, or about to dispose of, his property with intent to give an unfair preference ta others of his creditors, or that he was about to convert his property into money or other evidences of debt with intent to place it beyond the reach of his creditors.
The case lacks the essentials to sustain the writ invoked. An attachment based upon grounds such as those here alleged must be supported by proof of an act or acts showing the fraudulent intent of the debtor to place his property beyond the reach of his creditors, or to give the unfair preference charged. Winter vs. Davis, 48 La. Ann. 260 .
This is not a parallel case to that of Bowling vs. Colvin, 49 La. Ann. 1340, which seems to be relied upon by the trial judge as sustaining his view.
The distinguishing feature of that case was an unfair preference, evidencing a fraudulent intent on part of the debtor to favor certain tírteditbtB and exclude the plaintiff. He was under no greater obligation to do for the others what was done, than he was to the plaintiff. Ho favored certain of his ordinary creditors by confessing judgment in their favor — court being in session, thereby enabling them to forthwith prove the same, obtain judgment, record the .judgments in the mortgage book and thus acquire the status of mortgage creditors. He was applied to to do the same for the plaintiff, also an ordinary creditor. He refused. This court properly held it laid the defendant open to the chalrge that he had mortgaged his property, or was about to mortgage same, with intent to give an unfair .preference to some of his creditors, and that was ground for attachment by the very letter of the Code. The unfair preference there was glaring.
Here it fails altogether. Defendant did not alter the situation to the detriment of the plaintiff. In shipping and proposing to ship his sugar and molasses to his merchants he was only doing a duty which he had long prior thereto engaged to do, to the knowledge of plaintiff — certainly to the knowledge of its attorney who was consulted.
II.
The attachment not being maintainable, what damages, if any, is defendant entitled to ?
We do not find that the attachment originated in any malicious’ motive to injure defendant. It was merely a mistaken invocation of *1634 one of the conservatory writs of the la,w in the honest purpose -to collect a debt incurred under circumstances showing' the defendant, himself, not blameless.
Drawing' and cashing a large draft, like the one sued on, and another the same day for an equal amount in favor of another bank in the same town, without knowing for a certainty that the drafts would be honored, is not calculated to commend him to judicial sympathy. It greatly detracts from his “pose” as an injured and oppressed debtor.
The plaintiff is no ruthless creditor carrying things with a high hand and in reckless disregard of the rights of its debtor.
This debtor obtained plaintiff’s money on representations that were wot true, for when he tendered the draft for discount he is to be held as having represented it as good commercial paper.
He has not returned this money, nor has he sought to save the bank from loss by giving it security for the debt.
Under tire circumstances his exhorbitant dmand for $15,000.00 damages has much of the grotesque about it.
We do not find that the attachment closed down his factory; the protest of his two drafts discounted by the two banks did this.
The factory was not seized — only movable property in it was seized.
His credit was likely as much injured by the protests as it was by the attachment which followed.
The closing down of the factory was ordered by him from New Orleans. He had gone there to arrange with his merchants to carry him further, to lift the tar sinister of the dishonor of his paper, but had failed. Realizing this, he wired his son to stop operations.
Drawing bills which he should have known would not be honored had produced this dire result. If his credit and good fame have been lessened, the same is attributable rather to his own conduct than, to the act of his creditor.
With his credit gone, no money in possession and no place to get it, he could no longer purchase cane, and without cane his factory could not operate.
■ We do not find that this condition of affairs is altogether chargeable to the seizing creditor, nor even enough so to hold it responsible in damages to the defendant as here sought to be on that ground.
The grounds for attachment were not sufficient, but defendant can, under the circumstances of this case, recover nothing beyond the actual damage he has sustained as the result of the attachment.
*1635 We hold that the only actual damages shown, directly traceable to the attachment and to it alone, is an amount sufficient to coyer the fees of counsel employed to dissolve the attachment and the expenses incident to defendant’s attendance on the trial court for the purpose.
Three hundred dollars, we think, an ample allowance for this purpose.
Eor the reasons assigned, it is ordered, .adjudged and decreed that the judgment appealed from, in so< far as it maintains the attachment herein sued out, be avoided and reversed, and it is now adjudged and decreed that there be judgment on that branch of the case in favor of defendant, dissolving the attachment, and sustaining his reconventional demand to the extent of awarding him judgment against plaintiff for three hundred dollars damages.
It is further ordered, etc., that in all other respects the judgment appealed from be affirmed — costs of both courts pertaining to the attachment and its dissolution to be borne by plaintiff; the other costs, by defendant.
Breaux, J., takes no part.
Rehearing refused.