No. 13,544.

SUCCESSION OF B. A. KERNAN.

SYLLABUS.

1.  The successive administrations of the same succession under different administrators or executors are separate.   The rights and obligations of the different administrations are distinct.   The right of the last administrator to his commissions, be they large or small, is a direct liability from the succession to himself; and he cannot be remitted for payment to a settlement between himself and a prior administrator who had appropriated to himself for commissions the whole amount allowed for the commissions of a full administration.   The amount allowed by law for commissions is to be shared between the different administrators, but not necessarily equally.

2.  The executor of a succession is entitled to retain the services of an expert at

the expense of the succession to assist him in preparing his final account only in exceptional cases.

3. The executor of a succession is not entitled to be reimbursed from the succession for the premiums paid to a surety company for becoming surety on his bond, prior to the act of 1900.

4. Attorneys who are employed by certain of the legal heirs of a deceased person exclusively in their own behalf, to annul and set aside a special legacy which had been left to an outside party and who succeed in having the legacy set aside and the amount thereof made to enure consequentially to all the other legal heirs, are not entitled to be placed on the final account of the executor as creditors of the succession, with a privilege upon the entire funds of the succession, nor with a charge upon the enlarged amount which was made to all the heirs, through the setting aside of the legacy. They must look for payment of their services, however valuable to other parties, to the particular heirs who employed them.

5. Printers employed by the executor to print the brief of a solvent estate, needed in the Supreme Court in defense of an action attacking a clause in a will, are entitled to be paid as succession creditors, whatever disposition may ultimately be made of the amount in the setlement o the succession, among the heirs *inter se*.

A PPEAL from the Civil District Court, Parish of Orleans—*King, J.*

*Frank McGloin,* for W. H. Harding, Executor, and Individually, Appellant.

*William S. Parkerson* and *Bernard Bruenn,* for themselves and for heirs, Opponents and Appellees.

*Denegre, Blair & Denegre,* for Peter and Austin Kernan and Mrs. Kate McCarthy, heirs, Appellants.

*Boatner, Dodds & Boatner,* for Bernard J. Kernan, Mrs. Mary J. Harding and Miss Mary Kernan, Appellants.

The opinion of the court was delivered by NICHOLLS, C. J. ·

### STATEMENT OF THE CASE.

NICHOLLS, C. J. B. A. Kernan, the settlement of whose succession has given rise to the present litigation, left a will by which he made a number of special legacies, the largest being to Archbishop Jannsens and his successors in office. There was a provision in the will revoking

the legacy of any legatee who should contest any part of the will. Under the impression that the deceased had died intestate, the succession was placed under administration, Bernard J. Kernan being appointed administrator and B. Bruenn attorney for absent heirs. A will was subsequently found and probated, and William H. Harding appointed dative testamentary executor, no executor having been named in the will.

While Kernan was administrator he filed a provisional account which showed a large amount of cash in his hands. In this account he set out a number of claims against the estate, among others one by himself for $2389.64 commissions as executor on the whole amount of the inventory; he prayed for the advertisement of this account, and that after due proceedings it be homologated and he be authorized to pay the claims.

The account was homologated, but no order to pay the debts was made. During his administration a supplemental inventory was made. After Harding was appointed testamentary executor, Kernan, the administrator, was, at his instance, ordered to file a final account, which he did. In this, he charged himself with the cash which he had originally received, less the amount of the claims which he had presented therein, and which he had asked authority to pay; among others, his claim for commissions. He claimed in this account $51.75 commission as administrator on $2069.23, the amount of the supplemental inventory, and $170.85, five per cent. on collections of $3417.11. By this account, as filed, he showed himself indebted to the succession in the sum of $65.10.

A number of oppositions were filed to the account, the claim of the administrator being particularly opposed. It was claimed that "he had already received in full his legal commission on the amount of the inventory as provided by law, and that said commission should be returned to the estate by the administrator on the ground that he had maladministered the estate; had caused it severe losses, and that he was not, in law or equity, entitled to any commission whatever." It was further claimed that the administrator was indebted to the succession in a sum far exceeding six thousand dollars. Opponents prayed for judgment in accordance with the averments.

It appears that the administrator was very careless in his accounts. The attorneys of the opponents therefore called on him for his vouchers, and acting together with an expert whom they employed, they

revised the same and obtained evidence showing that the account was very erroneous. Mr. Bruenn was specially active in this work. The administrator pleaded as *res judicata* the judgment homologating the provisional account.

The result was a judgment of the District Court on January 19, 1900, against the administrator "in the full sum of twenty-one hundred and forty-three dollars and fifty-nine cents, with legal interest from May 9, 1898, until paid, and maintaining to that extent the several oppositions filed by the legal heirs," and "decreeing and ordering the administrator to account for and return said amount to the estate."

The judgment further decreed that only the legal commission of two and a half per cent. on the aggregate amount of original and supplemental inventory of this estate be permitted to be charged against the estate herein; the pro rata division of the same between said Bernard J. Kernan, administrator, and William J. Harding, dative testamentary executor herein, to be determined by the court, if necessary, on the filing of the final account by said dative testamentary executor, and to that extent further maintaining the several oppositions herein filed by the legal heirs of Bernard J. Kernan.

Harding, the testamentary executor, appealed from the judgment.

While the succession was under administration a number of the legal heirs, represented through their attorneys, Messrs. Parkerson and Bruenn, brought suit against the administrator to have the legacy left to Archbishop Janssens and his successors in office set aside. The suit was decided ultimately by the Supreme Court contradictorily with the executor, setting this legacy aside.

In February, 1900, Harding, testamentary executor, filed a final account, praying that it be approved and homologated and the funds distributed in accordance therewith. It simply shows the amounts received and disbursed by the executor and certain claims which he desired to pay, if authorized so to do. It does not attempt to fix the rights of the heirs *inter se* or propose any particular distribution as among them. Their rights *inter se* are left to be hereafter settled. (Succession Bothick, 52 Ann. 1878.)

On this account he placed L. J. Doize as a creditor for seventy-five dollars for services alleged to have been rendered to the succession for the purpose of enabling the executor to prepare his account; also Kolb & Leclerc as creditors for twenty-six dollars for printing the brief filed by the executor in the Supreme Court in defense of the suit brought

to annul the legacy made in the will of the deceased to Archbishop Jannsens and his successors in office.

He placed himself upon the account as a creditor for sums disbursed by him to the American Surety Company in consideration of its becoming surety upon the bond furnished by himself as dative testamentary executor.

He also placed himself upon the account as a creditor for the sum of two thousand one hundred and seventy-eight dollars and twelve cents ($2178.12) for commissions due him as testamentary executor, at 2½% on the amount of the inventory of the succession.

A number of oppositions were filed to the items just above referred to.

The item for commissions was opposed on the ground that "as appeared by the record the succession had already paid in full a commission based upon the same percentage and a prior inventory to Bernard J. Kernan, former administrator, and under the law and the final decree of the court, rendered on January 9, 1900, it could not be held liable for two commissions."

Messrs. Parkerson and Bruenn's claim to be placed on the tableau as succession privileged creditors for services rendered as attorneys in setting aside the special legacy in favor of Archbishop Jannsens and his successors, and Mr. Bruenn's claim for additional services as an attorney in the matter of the succession, not being admitted by the executor, they opposed the account, claiming their right to be so placed, and praying to be so recognized and paid.

The opposition was sustained and the executor was ordered to amend his account accordingly. The claims of Doizé, Kolb & Leclerc and that of the executor for reimbursement for the amounts paid by him, were rejected and ordered to be stricken from the account. The opposition to the claim of the executor for commissions was disposed of by the court's decreeing "that the opposition be maintained and the item be annulled and stricken from the account as a charge against the succession, reserving, however, to the executor the right to retain from the net interest eventually coming to Bernard J. Kernan, former administrator, as one of the legal heirs of the deceased, as his one-half of said administrator's commissions in said administrator's provisional account already allowed and paid, the sum of one hundred and ninety-four dollars and eighty-two cents."

The executor, Harding, L. J. Doizé, Kolb & Leclerc and the legal

heirs, other than those represented by Messrs. Parkerson and Bruenn, appealed.

## OPINION.

We are of the opinion that the claim of L. J. Doizè and that of the executor for reimbursement of the amount paid by him to the American Surety Company were properly rejected.

The latter claim falls under the decision of this court in the succession of Rabasse (51 Ann. 590). Act No. 76 of 1900 has no bearing upon the claim, as the suretyship was obtained prior to the passage of that law.

The evidence shows that the executor kept books containing entries of his receipts and disbursements and was in possession of all his vouchers. The preparation of the account required no expert knowledge, as it was not at all intricate. We think that Kolb & Leclerc's claim was improperly rejected; it should have been maintained. It was for work done at the instance of the executor while engaged in the performance of his official duty defending the will. This duty being undoubted, the expenses legally incurred in its discharge were certainly not to be thrown upon the executor personally. The expenditure by the executor being proper, he should be credited with it in his account, whatever may be the ultimate disposition of it when the heirs come to a settlement of the succession among themselves.

## EXECUTOR'S COMMISSIONS.

The commissions of executors are fixed by Articles 1683, 1684 and 1685 of the Civil Code. They provide that "an executor who has had the *seizin* of all the estate of the succession, whether he were charged to sell it or not, shall be entitled for his trouble and care to a commission of two and a half per cent. on the whole amount of the estimate of the inventory, making a deduction for what is due by insolvent debtors. If the executor has not had a general *seizin,* his commission shall only be on the estimated value of the object which he has had in his possession, and on the sum put into his hands for the purpose of paying the legacies and other charges of the will. The commission shall be shared among the executors, if there be several, and if their functions are not divided by the testator. In this latter case they shall be entitled to a commission on what has fallen to the administration of each separately."

We think Article 1685 of the Code declaring that the commissions should be shared when there are more than one executor was, as written, intended to apply to cases where more than one executor should have been appointed in the will. Its limitation as to amount has been made, however, to apply by jurisprudence to cases of successive administrations of the same succession. While the article declares that the commission shall be shared, it does not declare that the division shall be equal between all the executors, irrespective of the extent of the services of each, or of the beneficial or injurious character of their respective administrations. In the present instance the former administrator has fallen short in his account to the amount of $2143.59.

And he has also appropriated to himself by anticipation the sum of $2389.64 as his commissions, on the basis of a full, complete and faithful administration of his trust. He is an heir of the deceased, but what the amount falling to him will be, upon the settlement of the succession, is not yet ascertained. As a matter of course he should take nothing for commissions so long as he is indebted to the succession. If the amount enuring to him as an heir be applied to the payment of his indebtedness, the judgment of the District Court, as it is written, will leave the payment of the present executor to be made dependent, to a great extent, if not entirely, upon his being able to recover the same from the former executor. The executor is not responsible for the bad administration of his predecessor, nor for the fact that he has withdrawn from the succession funds the full amount which should have been made applicable to the payment of commissions. The heirs themselves are blamable for this fact, and they cannot throw a loss or a risk of a loss upon Mr. Harding; so far as he is concerned. The position is precisely the same as if Kernan, the former administrator, had taken $2389.64 improperly out of the succession, without reference to its withdrawal being assigned to a withdrawal on account of commissions.

Viewing matters from that standpoint, Kernan *quoad* him has to account to the estate for the full amount so withdrawn, plus the sum of $2143.59, which he has been adjudged to owe to the succession. The heirs cannot force the executor to look for his payment to a settlement between himself and Kernan, the administrator, of $2389.64. There is no privity between the two administrators or the two administrations. The latter cannot be blended and merged into each other as one continuing administration. If Kernan is behind in his accounts, the heirs

must themselves find the way to recoup themselves, whatever may be the sum due to the present executor for his commissions. Be the amount large or small, it is an amount due to him directly and absolutely by the succession, to be paid to him from the succession funds generally, not out of those which Kernan may have withdrawn. The commission of each administrator is independent and distinct from that of the other, though the fact of there having been two administrators may affect the amount coming to each.

The original inventory, taken in the succession while Kernan was administrator, showed the succession property to have amounted to $95,585. A supplemental inventory showed $2069.23 more. That, taken when Harding was appointed dative testamentary executor, showed property then to the amount of $87,151.

Kernan made collections while administrator to an amount of $3147.11. Harding, testamentary executor, made collections to the amount of $7015.

Kernan was in office about nine months, while Harding has been in office for more than three years.

We do not think it equitable to divide the commissions equally under the circumstances disclosed by this record.

We think the executor is entitled to claim absolutely and directly from the succession for his commissions the sum of $1593.09.

OPPOSITION OF MESSRS. W. S. PARKERSON AND BERNARD BRUENN.

Messrs. W. S. Parkerson and Bernard Bruenn, attorneys at law, opposed the account filed by the dative testamentary executor, Harding. In support of the same they alleged that in February, 1897, they prepared and filed in the proceedings of the succession of Bernard A. Kernan a suit in behalf of legal heirs of the deceased, the object and purpose of which was to question the validity of a clause in his last will which had already been probated by which realty to the value of sixty-eight thousand five hundred dollars, as well as the rents and revenues therefrom, were bequeathed to Francis Jannsens, then Archbishop of the Roman Catholic Diocese of Louisiana, and to his successors in office. That thereafter, to the certain knowledge of all the legal heirs of said deceased, they, the said opponents, carried on the proceedings contesting the legality of the said bequest, which bequest was finally, by judgment of the Supreme Court, declared null and void and of no

legal effect, and ordered returned to the mass of the succession for the benefit and advantage of all the legal heirs of Kernan.

Opponents further averred that during the pending of the contest proceedings, Bernard J. Kernan, the administrator of the said succession, filed what he called his final account with the said succession, wherein he admitted, but only for the sum of sixty-five dollars and ten cents, an indebtedness on his part to the said succession; that thereupon they, the opponents, filed on behalf of the legal heirs of the deceased, particular oppositions to the said account, and one of the opponents was agreed upon as the proper person to revise and *"expert"* the same, in order to endeavor to learn from the confused condition in which the papers and accounts of the administrator were, the exact and correct indebtedness of the administrator to the estate.

That such examination was duly made by said Bruenn, with the aid of a competent accountant, at an expense of twenty-five dollars, and an amended final account was prepared, the result of which was to show an indebtedness of $2143.50 on the part of the administrator to the succession; that on trial judgment was rendered against the administrator for that amount, with legal interest; that, altogether, their professional services to the estate and succession resulted in recovering for the benefit and advantage of all the legal heirs, the sum total of eighty-seven thousand one hundred and six dollars.

They averred that, although the proceedings resulting in the annulment of the said clause in the last will of the deceased were brought by opponents as counsel for some of the legal heirs of the deceased, yet they were so instituted to the full, explicit and undoubted knowledge of all the legal heirs, each and every one of whom anticipated to profit by the successful termination of said litigation, and the consequent return to the estate of all the realty with its rents, in said clause of the will attempted to be conveyed to the said Archbishop and his successors. That but for a certain clause in the said will, wherein it was declared that any legatee under said will attempting to annul any one of its provisions should by such action forfeit the particular legacy to him or her made in the will, all of the legal heirs would have joined in the proceedings looking to the annulment of the clause bequeathing the bulk of the estate to the Archbishop and his successors; that such of the legal heirs who were not special legatees or usufructuaries under the terms of the will were made parties in said will contest proceedings with the exception of Bernard J. Kernan, who, at the time of the filing

of the proceedings, was acting as administrator of the estate and was a necessary party to the prosecution of the suit, no testamentary executor having been nominated in said last will and no appointment of dative testamentary executor having been, at that time, applied for.

They averred that their professional skill and arduous duties enured to the enormous benefit and advantage of all the legal heirs; that the return of said property with its rents to the mass of the estate had not only rendered it solvent, but each one of the legal heirs would receive a large amount as his or her portion of inheritance therefrom. That but for their services, this estate, with the shortage of the administrator, would have been indebted to the residuary legatee, the Archbishop.

That in view of the premises, they were entitled to be recognized as creditors of the entire estate for the amount stated, together with a large amount expended by them for costs of court, briefs, and other purposes connected with the said suit. Their prayer was to be so recognized. Opponents refer the court to *Friend vs. Graham, Administrator,* 10 La. 439; *Succession of McLaughlin,* 14 Ann. 398; *Succession of Fowler,* 7 Ann. 207; *New Orleans vs. City of Baltimore,* 15 Ann. 625; *Greenough vs. Trustees,* 105 U. S. 532; *Davis vs. Gemmell,* 73 Md. 539; *Central R. R. vs. Pettus,* 113 U. S. 124; *Grimball vs. Cruse,* 70 Ala. 539, and to Civil Code, Articles 2299-2300.

Most of the decisions cited from other States are cases where it was held that "the result of the litigation and judgment was to bring to light and place within the control of the court a *fund* which, without such legal proceedings, would be beyond the reach of creditors; cases in which outside creditors, if they wish to share in the fund, must come in and avail themselves of the decree and necessarily of the professional labor and research which have discovered the fund and made it available; cases where all who come in and share the benefits of the recovery must take them *cum onere;* where they must contribute to the expenses as a condition precedent upon which they claim to share in the benefits."

It is urged that it would be palpably inequitable after the labor has been performed and the result has been achieved,that the heirs,other than the immediate ones in whose names the proceedings were conducted, should be allowed to absorb portions of the fund which would have passed to other parties. It is urged that they stood by—saw the work done without objection or interference—and they cannot now be heard equitably to except to that work being paid for out of the fund realized by their labor when reaping the benefit of that very work and labor.

Opponents invoke the equitable principle announced in Article 1965 of the Civil Code that "no one ought to enrich himself at the expense of another," and the provisions of Article 2299, to the effect that "equity obliges the owner whose business has been well managed to comply with the engagements contracted by the manager in his name; to indemnify the manager in all the personal engagements he has contracted and to reimburse him in all useful and necessary expense." They say they are entitled to all the privileges and rights of a *negotiorum gestor.*

The executor and the heirs contesting this claim, deny that the services rendered by Messrs. Parkerson and Bruenn were rendered to the succession, or that anything is due by it or that any particular heirs were authorized to enter into a contract for or on behalf of it, or could bind it any way.

They aver that these attorneys must look exclusively to the parties who employed them for remuneration, and that they have no right in law to the detention in the hands of the executor of the interests of these heirs for the payment by the executor of their individual debts; they deny that any new fund has been brought into the succession charged with the expenses incurred for the purpose of so bringing it in; they assert that that fund has been from the beginning in the hands of the executor. They deny that these attorneys acted the part of a *negotiorum gestor* for the succession or claimed to act in its behalf in anything they did.

These parties refer the court to 5 Ann. 481; 8 Ann. 51; Cooley vs. Cecile, 11 Ann. 596; 27 Ann. 411; Hand vs. Railroad Co., 21 S. C. 179; Lowry Banking Co. vs. Atlanta Piano Co., 95 Ga. 146 (22 S. E. Repr. 42); Grimball vs. Cruse, 70 Ala. 534; Chicago Railroad Co. vs. Larned, 26 Ills. 218; Savings Bank vs. Benton, 2 Metc. (Ky.) 240; Hubbard vs. Camperdown Mills, — Ala. (1 S. E. Repr.) 5-8-9; Wilson vs. Kelly et al., 9 S. E. Repr. 523; Strong vs. Taylor, 2 Southern Repr. 760-762; 1 Wait's Actions and Defenses, 456; Weeks on Attorneys at Law, 3339; 2 Vol. Am. & Eng. Ency. of Law, p. 438 (2nd Ed.).

In the case at bar the parties employing the attorneys did not profess to act for parties other than themselves. Had they, in making the employment, done so professedly for other parties, either separately or jointly with themselves, it could be conceded that these attorneys would have a direct right of action against the latter if they stood by making no objection, and finally availed themselves of the benefits resulting

from their labor. The absence of an actual authority originally to have so employed them would be replaced or cured by a ratification of that act, just as the action of an actual agent beyond the powers conferred upon him, where in effecting a loan for his principal he had granted a mortgage and the latter had received the money, or if it had been usefully employed for his benefit, the principal would be bound to ratify the mortgage and might be compelled to execute it. (C. C. 3003.)

The maxim, "*qui facit per alium facit per se*," would apply in such a case, but it would not apply where the parties employing the attorneys had made the employment exclusively on their own account. In such a case there would be no privity whatever between the attorneys and the parties from whom they, would seek to obtain outside remuneration. (41 Ann. 113.)

If a person acts solely for himself he does not do so as *negotiorum gestor* for some one else. If a person wtihout any authority from the owner undertakes to act, not for himself, but for the owner, Article 2299 declares "that equity obliges the owner whose business has been well managed to comply with the engagements contracted by the manager in his name; and to indemnify the manager in all personal engagements he has contracted, and to reimburse him in all useful and necessary expenses."

When the article speaks of engagements made "in his name" we understand it to refer to engagements made in the name, not of the manager, but of the person for whom he is undertaking to act, and when it refers to indemnification, it refers to a claim to be made directly between the manager and the party for whom he has acted, and not to a right of indemnification by the latter to parties to whom the manager, by engagements made in his own individual name, should have come under personal obligations. These parties have to look to the manager, leaving the latter to advance and adjust any just claim for indemnification which he might have against the owner. If the parties with whom the manager has made a contract in his own name could reach the owner benefiting by the manager's contract it would not be by a direct action, but by, and under, and through proceedings in the name of the manager against the owner. "*Les tiers envers qui le gerant s'est personnellement engage, n'ont point d'action direct contre le maitre. Mais ils peuvent l'actionner du chef du gerant pour tout ce qu'il doit a ce dernier a titre d'indemnite des dits engagements.*" (Art. 1166 C. N.; Dalloz and Vergé, under Art. 1375 C. N., No. 41. See Rndolph vs. Stark, 51 Ann. 1131.)

The equity could not be worked out in this way if the manager himself had no claim for remuneration or reimbursement.

It may be remarked that it is not every benefit received for which a person can be compelled to pay. (Sharp vs. Levert, 51 Ann. 1249.)

Messrs. Parkerson and Bruenn, under their employment, were acting solely as the attorneys of the particular heirs in whose names they appeared in court. These heirs did not pretend to act for the others. The legal situation was such as to even prevent their acting for them. By the terms of the will, a contest raised by any particular legatee as to any of the provisions of the will would work a forfeiture of the legacy. This forfeiture of the legacy might eventually enure to the benefit of the parties whom Messrs. Parkerson and Bruenn were employed by, if they thought proper to exact the forfeiture. The forfeiture could still be invoked, if in reality the legatees did *in fact,* though not apparently, contest the will. The mere indirect consequential benefit arising to these legatees from the setting aside of the clause in the will making a special legacy to Archbishop Jannsens and his successors, is not a benefit for which the attorneys can claim remuneration from them.

In Roselius vs. Delachaise, 5 Ann. 481, this court said that, however valuable the services of an attorney might be to a party in a suit in which he represented others having a similar interest, he cannot recover a fee from a party who has not employed or authorized any one to employ him.

The same principle was announced in 11 Ann. 596, Michon vs. Gravier. The question was again presented in Waites & Mathus vs. Succession of Brown, 27 Ann. 412, and the decision in Friend vs. Graham, Administrator, 10 La. 440, was advanced in opposition to the views of the court announced in the Roselius case. The court, however, adhered to the doctrine of the latter case.

In Hand vs. Railroad Co., 21 S. C. 179, it was said:

"No one can legally claim compensation for voluntary services to another, however beneficial they may be, nor for incidental benefits and advantages accruing to him on account of services rendered to another. by whom he was employed. Before a legal charge can be sustained there must be a contract of employment either expressly made or superinduced by the law on the facts.

In Lowry Banking Co. vs. Atlanta Piano Co., 95 Ga. 146, the court said:

"It is a general rule of law that every man is to pay his own lawyer;

that every litigant pays his own counsel and to justify the court in appropriating funds of one person to the payment of the fees of another person, the person affirming the correctness of the proposition ought to be required to establish by uncontrovertible authority the power of the court to do so."

. In Chicago Railroad Co. vs. Larned, 26 Ills. 218, the court said:

"Whatever there may be in this claim in a moral point of view, it would be a most dangerous precedent to hold that because defendant had sat silently by and let counsel employed by another, argue a case, which, if won, would secure his suit, therefore he agreed to pay counsel in proportion to the benefits thus received."

In Hubbard vs. Camperdown Mills the court declared that a claim for professional services against persons who are *sui juris* or against the property of such persons, must like a claim for any other service rest upon contract either express or implied made directly with the person so sought to be charged, or with some agent or representative of such person, and the simple fact that such services have enured to the benefit of others when there is no contract relation either directly or through some agent or representative, affords no legal foundation for a charge against such other person. So the simple question here is not whether the services of the attorneys for the plaintiff have enured to the benefit of the appellant, but whether any contract relation has been established between them."

In Strong vs. Taylor, the court said:

"When the special interest of a party to a suit is involved, though his attorney in representing him must incidentally represent others having a like special interest, and though his services may be valuable, those who have not employed him will not be required to contribute toward the payment of his fee. After the fund or property has been brought in and made available by decree of the court and nothing remains but proper administration and distribution, a contest which may arise between claimants in respect to priority or the right to share are individual contests involving antagonistic interests. If the costs and expenses accruing from litigation between the several claimants alone relate to the distribution of a fund already under control of the court, were allowed as charges thereon, the estate in many instances would be thereby consumed."

The quotations we have made from courts other than those of Lousiana show them to be in full accord with our own.

In McWilliams vs. Hayem, 4 Rob. 376, this court said: In the absence of any privity a very strong case indeed must be made out to justify the application of the maxim that "no man should be permitted to enrich himself at the expense of another," as a ground of recovery. Even among persons who have dealings with each other, one of them may sometimes receive the benefit of the labor or expense made by the other without being made to pay for it. The owner of a house, for instance, is not bound to pay for improvements which it may have suited the interest or convenience of a lessee to make if authorized by him, although such improvements may have enhanced the value of the property. Were it otherwise, a maxim so replete with natural equity might lead to the greatest injustice. These views were affirmed in Mc-Cauley vs. Hayem, 6 Rob. 359, and Succession of Mulligan vs. Kenny, 34 Ann. 51, and Fox vs. Sloo, 10 Ann. 11.

The heirs of Kernan, other than those represented by Messrs. Parkerson and Bruenn, were unwilling, in view of the danger of their forfeiting their legacy, to join in an attack on any part of the will. Counsel were, therefore, advised that they would have to rely upon their own clients for remuneration.

Referring to the claim of the attorneys that through their efforts a fund had been brought into court which should be charged with the value of their services, as an expense incidental to bringing it into court, counsel opposing their claim say:

"The trouble of the theory of their case is that it is based upon a purely imaginary state of facts. No fund has been created. An illegal legacy has been defeated, this is all. The property which composed the legacy has always been in the hands of the administrator or executor. It is there still. No change in the status of the succession has resulted from appellees' efforts; no property has been taken from or added to it. The only effect is that the destination of a part of it has been changed from a special legatee to the heirs at law. If the contention of the appellee should find favorable consideration it would give rise to endless confusion in the settlement of successions. For instance, "A" is a creditor of a successsion and employs counsel to represent him in the settlement. The counsel in protecting his client's interests files opposition to asserted debts, opposes allowances to the administrator and succeeds in largely reducing debts or increasing assets. According to appellees' contention he is entitled to fees from the successsion, or from all the heirs and other creditors, which are to

be charged against the fund. The fund, in that case, would be the debts rejected or the increased amounts for which the administrator would be held liable."

Counsel is correct in saying that no fund was brought into the succession and under administration by the services of these particular attorneys, which was not already there, and that, therefore, decisions subjecting a fund which would have been so brought in to a charge upon it in favor of the attorneys by whose efforts it was brought in as a necessary expense to be paid out of it before distribution among those who are to share in it, have no application.

The facts in the Succession of Linton, 31 Ann. 130, are not very clearly shown, but, evidently, the legal title of the plantation, the proceeds of which were to be divided among the creditors, had been placed in the name of some other than Linton. An action became necessary to recover the property for the succession, and it was the fee of the attorney who had brought that suit to a successful issue which was decreed to be legally chargeable against the proceeds as an expense of recovery. It does not appear who employed the attorney, but he was evidently acting for and in behalf of the succession by the authority of some one acting in its interest.

We had occasion recently to refer to this question in the matter of Kern & Co. vs. Their Creditors (reported in 49 Annual, 891), where the fees of the attorney were allowed against the fund which had been recovered through their efforts, but they were allowed upon the express ground that the fund went under administration of the syndic charged with the payment of the attorneys' fees as an expense of the recovery of the same under admitted promise and agreement of the syndic— the representative of all the creditors.

We took occasion in that case to say "with reference to the proposition that the services of the attorneys of Shwartz & Co. and the payment of costs enured to the benefit of the creditors of Kern & Co., we must say that in our view it is not a firm basis for an action. However valuable the services of counsel may have been to the syndic, it follows then that those by whom they were employed can not recover fees paid from parties who did not employ them." One of the members of this court (Mr. Justice Miller) dissented, even under these circumstances.

We are of the opinion that the fees of Messrs. Parkerson and Bruenn, for professional services in the setting aside of the clause of

the will of the deceased in favor of Archbishop Jannsens and his successors, can not be legally charged as a debt of the estate or upon the fund whose destination was changed by the decree in that case, and that they will have to look for payment to the particular persons by whom they were employed.

The services of Mr. Bruenn in examining into the affairs of the succession while under administration of the administrator, and in causing the indebtedness of the latter to be increased beyond the amount shown by the account filed by him, is governed by the same principles. The attorneys of other parties took part in the same work, though not so actively. These have made no charge against the estate for their services. They look to their client for remuneration and so must Mr. Bruenn.

The claim of these opponents having been advanced as one against the succession and a particular fund therein, and it being held not to be one of that character, we are not called on to examine into it as a claim against the heirs who employed them. That matter can not be adjusted or passed upon in the present litigation and in the present form.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from, in so far as it recognizes and decrees Messrs. Parkerson and Bruenn as creditors of the succession for the sum of ten thousand dollars, with privilege, be, and the same is hereby annulled, avoided and reversed, and the said claim against the succession be and the same is hereby rejected, and the opposition on which the judgment of the District Court, as to that claim was predicated, is hereby dismissed.

It is further ordered, adjudged and decreed that the judgment appealed from, in so far as it rejects the claim of Kolb & Leclerc against the succession for twenty-six dollars for the printing of briefs, be and the same is hereby annulled, avoided and reversed, and said claim is hereby recognized as a just debt of the succession and hereby ordered to be paid by the executor in due course of administration.

It is further ordered and decreed that William J. Harding be and he is hereby recognized and decreed a creditor absolutely and directly of the succession for the sum of fifteen hundred and ninety-three dollars and nine cents, for his commissions as executor, and that anything inconsistent with such fact and recognition in the judgments appealed from be, and the same is hereby annulled, avoided and reversed.

It is ordered, adjudged and decreed, that the judgment appealed from except among the heirs *inter se,* as it is not herein altered and reversed, be and the same is affirmed, costs of the oppositions rejected to be borne by the opponents therein; other costs to be paid by the successsion.

## ON APPLICATION FOR A REHEARING.

NICHOLLS, C. J. In the brief filed for a rehearing by Messrs. Parkerson and Bruenn, third opponents, it is declared that the court had done Mr. Bruenn an injustice and erred in stating that he claimed an extra compensation for the services specially performed by himself and the court is asked to erase from its opinion all reference to him as there was nothing in the pleadings on which to base any charge against him.

The third oppositions of Messrs. Parkerson and Bruenn filed in the cause declared that the opponents were William S. Parkerson and Bernard Bruenn appearing each in his own behalf and for their joint interests. After setting out their services as attorneys-at-law in the matter of the Succession of Kernan, opponents prayed that their several particular and special oppositions to the final account of William H. Harding, dative testamentary executor, be maintained and that they be recognized as privileged creditors for the sum of twenty-one thousand seven hundred and seventy-six dollars and fifty cents. Opponents did not claim separately any portion of this fee. In the statement of their services it was alleged that Kernan, the first administrator, had presented an account admitting an indebtedness by him to the succession of sixty-five dollars, that this account did not show his correct indebtedness, and opponents prepared and caused to be filed in behalf of the legal heirs particular and distinct oppositions to the account and that one of the opponents, Bernard Bruenn, was agreed upon by the court and the counsel for the administrator to revise said account and endeavor to learn from the confused condition in which the papers and accounts of the administrator were, the exact and correct indebtedness of the administrator.

That such examination was made and effected by said Bruenn with the aid of a competent accountent at an expense of twenty-five dollars and an amended final account was by them prepared, the result of which was to show an indebtedness by the administrator of the sum of twenty-one hundred and forty-three dollars. The rendition by Mr. Bruenn of the services here referred to was clearly shown by the evi-

dence adduced. Allusion was made to these services by the court under these pleadings and that evidence. No charge was made or intended to be made against Mr. Bruenn in this connection. He performed the services and believing they were entitled to recognition and remuneration, remuneration was claimed without the slightest impropriety. The court did not think they were legally due *by the succession as such,* and so decreed.

The rehearing is refused.