SOMMERVILLE, J.
In their opposition, opponents allege:
“That the last will and testament of the said Virginia B. McPherson contained a provision that the plantation of the deceased, which composed almost the entire estate, required the executors to sell the same to one of the heirs in the family at not less than $40 per acre, and that said testament also contained directions as to the amounts to be collated respectively by Ella M. Smith, Mrs. Virginia Casse, Chapman Smith, Clarence Smith, Virginia Prescott, Lizzie Smith, and Mrs. Casse for Martial Casse.
“They further represent that the provision requiring the sale of the plantation in the family at $40 per acre was ineffectual and impossible of enforcement,, and the directions given in the testament as to the amounts to be collated by the several heirs met with opposition from the heirs as being illegal and inequitable, and under these circumstances it became necessary to have recourse to the courts to obtain a legal and final settlement of these questions before the plantation could be sent to sale, in order to effect a partition ' and settlement of the succession. * * *
“Virginia McPherson, who was entitled to one-half of the estate, employed opponents to take such steps as were necessary to authorize and direct the executors to proceed with the settlement of the estate, and petitioners thereupon, on December 1, 1909, filed suit nominally on her behalf, but in reality, as was well understood by the testamentary executors and their attorney, in part for the benefit of the succession and in the interest of all the heirs, and that after the filing of the suit the executors and their attorney, entirely acquiescing in the fact that the suit was in great part for the benefit of the succession, aided the prosecution of the suit by supplying the evidence; the judgment rendered by your honorable court on the 30th day of December, 1909, having been in fact drawn up by the attorney for the executors by agreement with opponents; and, further, the attorney of the executors voluntarily stated to opponents that their services had inured to the benefit of the estate, and that he would place them on the tableau for a fee for said service. * * *
“Wherefore opponents allege that their legal services as detailed above inured to the benefit of the succession and heirs, and entitle them amply to a compensation of $250, and they pray that the tableau filed by the executors be so amended as to place them thereon as creditors of the estate for $250 for the legal services rendered by them.”
Opponents say in their brief:
“At the outset, we admit that the lower judge stated correctly the general rule, and that unless the claim of Lewis & Lewis to make the estate liable to them for legal .services comes within the scope of the exceptions to the rule carefully laid down in the Succession of Kernan, 105 La. 592, 30 South. 239, and in other cases, they cannot recover. This court, in the elaborate and exhaustive discussion of the question of the liability of one for the fees of counsel not employed by him, but whose services inured to his benefit, for the first time in the history of our jurisprudence, defined one of the exceptions to the general rule, and which is applicable here. Cases are referred to by this court in that cascwhere fees of counsel employed by only some of the parties in interest were allowed for bringing into light and within control of the court new funds that otherwise would not have been added to the estate. That seems t.o be a well-recognized exception to the general rule. But neither does the case of the Succession of Kernan, nor any case referred to by this court in that case, nor any of the cases cited by the lower judge, cover or decide the particular question upon which the liability of the succession of Mrs. McPherson hinges for the payment of the fee claimed by Lewis & Lewis. That question may be thus stated: Is a succession liable for the fees of an attorney who, without being employed by the succession, renders legal services at the instance of .any one interested in the succession, and which services not only inure to the benefit of the succession, but are essential to the settlement of the succession? We hold that the attorney who renders such legal services is entitled to be compensated by the succession, even in case the representatives of the succession, or the heirs, have not directly, or by implication, ratified the employment of the attorney. If, in such case, the heirs or representatives of the succession have ratified the employment of the attorney, such case would be brought within the scope of the exception to the general rule laid down in the Kernan Case.”
And opponents point to the following paragraph in the Kernan Case as containing an exception to the general rule that attorneys at law cannot recover fees, except under an expressed or implied contract of employment :
“In the case at bar the parties employing the attorneys did not profess to act for parties other than themselves. Had they, in making the employment, done so professedly for other parties, either separately or jointly with themselves, i* could be conceded that these attorneys would have a direct right of action against the latter if they stood by, making no objection, and finally availed themselves of the benefits resulting from their labor. The absence of an actual an *185 thority originally to have so employed them would be replaced or cured by a ratification of that act, just as the action of an actual agent beyond the powers conferred upon him, where, in effecting a loan for his principal, he had granted a mortgage, and the latter received the money, or if it had been usefully employed for his benefit, the principal would be bound to ratify the mortgage, and might be compelled to execute it.” Succession of Kernan, 105 La. 592, 30 South. 239.
[1] Opponents do not fall within the terms of the quoted paragraph. Mrs. Virginia McPherson Casse, in employing opponents, did not do so professedly for the other heirs. On the contrary, they and the testamentary executors of the succession were made defendants in the suit of Mrs. Casse to reduce the amount to be collated by her as fixed in her mother’s will, and further to increase the amounts to be collated by some of the defendants as fixed in that same will. She was engaged in opposing the will in several of its parts. She was successful in reducing the amount to be collated by her, and the active mass of the succession was reduced to that extent. This part of the suit was clearly not for the succession; it was against the succession. She also asked in her petition that a certain clause written in the alternative in the will be declared impracticable, in which most of the other heirs joined, in their answers to Mrs. Casse’s suit. And there was judgment in favor of all parties, ordering the property to be sold at public auction, rather than in the method suggested in the will. The other heirs, through their own attorneys, appeared in court when they answered Mrs. Casse’s petition against them, and joined her and her attorneys in asking that the provision in the will referring to the method of sale of a plantation be declared inoperative and without effect. But their act was not the act of Mrs. Casse. She had not for one moment professed to opponents to be acting for her coheirs, either separately or jointly with her. And the coheirs, as we have seen, did not stand by, making no objection, and finally avail themselves of the benefits resulting from the labor of opponents. They (the other heirs) went into court, through their own attorney, and sought the relief they desired. And the trial court, in its judgment, granted the relief which plaintiff and defendants all prayed for in their petition and answers, reserving for future trial the matters set forth which had not been agreed upon and asked for jointly.
[2] By the proceeding last referred to, no fund was brought into the succession; the executors did not have anything put under their control which they had .not had before. The suit was not beneficial in any degree to the succession or the heirs; on the contrary, the employment of opponents by one of the heirs resulted in diminishing the active mass of the succession by some $1,-700.
Messrs. Lewis & Lewis, under their employment, were acting solely as the attorneys of the particular heir in whose name they appeared in court.
The judgment apiiealed from is affirmed.