161 So. 161

**PRICE v. FOSTER et al.**

No. 32700.

April 1, 1935.

Rehearing Denied April 29, 1935.

See, also, 177 La. 586, 148 So. 887.

Irion & Switzer and Chas. B. Emery, all of Shreveport, for appellant.

Foster, Hall, Barret & Smith, of Shreveport, for appellees.

HIGGINS, Justice.

This is a suit by an accountant, who specialized in the adjustment of federal income tax matters, to recover from the defendants, in solido, the sum of $4,930.23 covering services alleged to have been performed by him for the benefit of the defendants, with their knowledge and consent.

The petition alleges that the late J. M. Foster, Sr., in October, 1924, verbally employed plaintiff to adjust a claim for income taxes for the year 1921, amounting to the sum of $52,275.77, with the Commissioner of Internal Revenue of the United States; that it was agreed that Mr. Foster would pay the plaintiff a reasonable fee, contingent upon securing a reduction of the tax claimed; that after plaintiff had worked on the case for several years, Mr. Foster died, and thereafter plaintiff continued to render services in behalf of his estate, and finally on July 19, 1929, had the United States Board of Tax Appeals fix the amount of the tax at $2,973.46, which

resulted in a saving to the estate of $49,302.-31; that plaintiff was entitled to a fee of $4,930.23, having employed considerable time each month for five years in securing the adjustment and having advanced the necessary expenses incurred in traveling between the cities of Shreveport, La., and Washington, D. C., totaling approximately $1,000; that the defendants inherited the property, rights and credits of the estate of Mr. Foster, preserved through the efforts and services of the plaintiff, and that it would be inequitable and unjust to allow defendants to enrich themselves at the expense of the plaintiff; "* * * that while he contended strenuously that defendants herein were bound unto him by virtue of his original contract of employment by the said J. M. Foster, Sr., the Supreme Court of Louisiana had held otherwise and rejected his demands as against said defendants in proceedings No. 32,198 on the docket of said court [177 La. 586, 148 So. 887], wherein said Supreme Court held that petitioner's contract of employment by the said Foster terminated upon the death of the said Foster; * * * that he continued said work as originally employed by Foster and carried the same to a successful completion and that the said defendants herein expressly ratified and accepted his said work by accepting the benefits thereof and by paying to the United States Government the sum of Two Thousand Nine Hundred Seventy-Three and 46/100 ($2,973.46) Dollars, on the 13th day of June 1931, said sum being the amount to which petitioner was successful in having said original assessment reduced to; that petitioner continued and completed said work with the full knowledge of said defendants, particularly said defendant, Mrs. Margery

Land Foster Simonsen, deceased, and defendants knowingly took the advantage of the benefits enuring to them by virtue of petitioner's work and efforts by paying to the said United States Government the said sum of Two Thousand Nine Hundred Seventy-Three and 46/100 ($2,973.46) Dollars, as aforesaid"; and, "that said defendants have knowingly taken advantage of petitioner's work and efforts, thereby ratified and confirmed the same and thereby became personally bound unto petitioner for his fee for such work, which said fees became the personal obligation of said defendants, in solido, by virtue of their said acts."

Plaintiff prayed for the issuance of a writ of attachment against several of the defendants on the ground that they were nonresidents.

The defendants urged four grounds in support of their contention that the writ of attachment was illegally issued: First, that the petition disclosed no right or cause of action; second, a plea of res adjudicata based on a former judgment between the same parties with reference to this same claim; third that the action is barred by one and three years' prescription; and fourth, that plaintiff is estopped to assert this action, he having elected to sue in a prior proceeding on the same claim on a quantum meruit.

There was judgment dissolving the writ of attachment with damages in the sum of $250, as attorney's fee. Exceptions of no right or cause of action were sustained by the court as to all of the defendants, on the same grounds urged for dissolving the attachment.

Plaintiff appealed and respondents against whom the attachment was issued have answered the appeal, praying that the amount of the attorney's fee be increased from $250 to $500.

This action is a sequel to the suit of Price v. Foster et al., 177 La. 586, 148 So. 887, in which plaintiff asserted this same claim for services against the defendants as legatees of the late J. M. Foster, Sr., and we held that plaintiff's mandate from Mr. Foster was not coupled with an interest and death dissolved it, and we also sustained a plea of prescription of three years and dismissed the plaintiff's suit.

Since the question presented with reference to the issuance and dissolution of the writ of attachment involves the same legal problem presented by the exceptions of no right or cause of action as to all of the defendants, we shall discuss these points together.

▉ There is no allegation in the plaintiff's petition that he was employed by the defendants to render any services in their behalf or in behalf of the estate of J. M. Foster, Sr. He does not claim that the defendants said or did anything which could be reasonably construed by him to indicate that in the event he continued in his efforts they would pay him for his services. Nor does he say that he ever told defendants or indicated to them that he was looking to them for payment of his fee or remuneration in the event that he was successful. He did not apprise defendants that he considered himself in their employment and that he was expecting them to remunerate him. The petition merely alleges that the defendants, having knowingly taken advantage of petitioner's work and efforts by

paying the tax after it was adjusted, and accepting and being placed in possession, through inheritance, of the amount that he saved the estate of Foster, they thereby ratified and confirmed his employment by Foster and became personally liable to pay him for his services.

The payment of the tax was not made until after the adjustment was final and defendants had no alternative, for they had to pay the tax assessed. We do not believe it can be logically said that, the mere fact that defendants paid the tax, they thereby approved and ratified the plaintiff's contract of employment with Mr. Foster.

In the Succession of Kernan, 105 La. 592, 30 So. 239, 242, this court had under consideration a similar situation and said:

"Messrs. W. S. Parkerson and Bernard Bruenn, attorneys at law, opposed the account filed by the dative testamentary executor, Harding. In support of the same they alleged that in February, 1897, they prepared and filed in the proceedings of the succession of Bernard A. Kernan a suit in behalf of legal heirs of the deceased, the object and purpose of which was to question the validity of a clause in his last will, which had already been probated, by which realty to the value of $68,500, as well as the rents and revenues therefrom, was bequeathed to Francis Jannsens, then archbishop of the Roman Catholic diocese of Louisiana, and to his successors in office; that thereafter, to the certain knowledge of all the legal heirs of said deceased, they, the said opponents, carried on the proceedings, contesting the legality of the said bequest, which bequest was finally, by judgment of the supreme court, declared null and

void and of no legal effect, and ordered returned to the mass of the succession, for the benefit and advantage of all the legal heirs of Kernan. * * * that altogether their professional services to the estate and succession in reconvention for the benefit and advantage of all the legal heirs amounted to the sum total of $87,106. They averred that, although the proceedings resulting in the annulment of the said clause in the last will of the deceased were brought by opponents as counsel for some of the legal heirs of the deceased, yet they were so instituted to the full, explicit, and undoubted knowledge of all the legal heirs, each and every one of whom anticipated to profit by the successful termination of said litigation. * * *

"It is urged that they stood by and saw the work done without objection or interference, and they cannot now be heard equitably to except to that work being paid for out of the fund realized by their labor, when reaping the benefit of that very work and labor. * * *

"The mere indirect consequential benefit arising to these legatees from the setting aside of the clause in the will making a special legacy to Archbishop Jannsens and his successors is not a benefit for which the attorneys can claim remuneration from them. In Roselius v. Delachaise, 5 La. Ann. 481, 52 Am. Dec. 597, this court said that, however valuable the services of an attorney might be to a party in a suit in which he represented others having a similar interest, he cannot recover a fee from a party who has not employed or authorized any one to employ him."

In the case of Forman v. Sewerage & Water Board, 119 La. 49, 43 So. 908, 909, 12 Ann.

Cas. 773, plaintiff sued for an attorney's fee on the theory that the defendant had received and accepted great benefit as a result of his services and efforts. In deciding adversely to the plaintiff's contention, we said:

"There can be no doubt that the services of plaintiff were immensely valuable, and inured enormously to the benefit of the defendant board and of the people of the city of New Orleans, and incidentally of the whole state. There can be no doubt, also, that the task which plaintiff undertook and successfully accomplished was gigantic, in respect both of the mountain of work to be done and of the legal ability required to do it, and there can be no doubt that plaintiff ought to be remunerated from some source; but it is equally plain that no right of action has ever arisen in his favor against the defendant board. Plaintiff was employed by the state, and not by the defendant board, and was the attorney of the state, and not of the defendant board. The suit was by the state to forfeit the charter of one of her corporations. The defendant board not only was not a party to it, but, for over a year after it had been brought, was not even in existence. The following authorities are distinctly in point, and are conclusive against a right of action of any kind, equitable or legal, arising in favor of an attorney at law for legal services without his having been employed." Citing Roselius v. Delachaise, 5 La. Ann. 481, 482, 52 Am. Dec. 597; Michon v. Gravier, 11 La. Ann. 596; Wailes & Mathews v. Succession of Brown, 27 La. Ann. 411.

See, also, In re McPherson's Estate, 129 La. 182, 55 So. 756; New York Life Ins. Co. v. Dorsett, 152 La. 67, 92 So. 737; Price v. Foster et al., 177 La. 586, 148 So. 887.

While the above authorities involve a question of attorney's fee for services rendered, we believe that the principle announced is equally applicable here.

 We conclude that the writ of attachment was wrongfully issued and properly dissolved by the trial judge, and that he correctly sustained the exceptions of no right or cause of action.

The only claim for damages for the dissolution of the writ of attachment is the attorney's fee.

Counsel for plaintiff contends that as the writ of attachment was issued against the property of a nonresident for the purpose of giving the court jurisdiction, that even though the writ was improvidently issued, defendants are not entitled to damages in the form of an attorney's fee, citing Bass v. Baskowitz, 170 La. 779, 129 So. 201.

That case is not in point, because the writ of attachment there was dissolved on a technicality, although the court concluded that the plaintiff was clearly entitled to an attachment, since the defendants were nonresidents.

In the instant case, the plaintiff was not entitled to an attachment, since he had no claim against the defendants, and therefore illegally caused the attachment of their property.

In the motion to dissolve the attachment, it is alleged that the nonresident defendants have been compelled to employ counsel to release the attached property, which is valued at more than $25,000, and have incurred an obligation to pay an attorney's fee commensurate with the value of the

property and the services performed, the fee being estimated by defendants at the sum of $500. The movers offered the testimony of several practicing attorneys as to the value of their services which were appraised at a minimum of $300. The district judge concluded from the evidence, as well as his own knowledge of the case, that $250 would be adequate. We believe that the fee fixed is neither excessive nor inadequate, and, consequently, it will not be disturbed. Brandon v. Allen, 28 La. Ann. 60; State Bank of New Iberia v. Martin, 52 La. Ann. 1628, 28 So. 130; Wall v. Hardwood Mfg. Co., 127 La. 959, 54 So. 300; see, also, Louisiana Digest, vol. 1, verbo "Attachment," § 162.

For the reasons assigned, the judgment appealed from is affirmed.

LAND, J., recused.