456 So.2d 622 (1984)
Thomas K. KIRKPATRICK, and Gary L. Keyser
v.
Furman YOUNG, Lorena Rambin, Bessie Mae Henderson, Shannon Dunn Benis, Kevin Dunn and Kelly Dunn.
No. 83-CC-2627.
Supreme Court of Louisiana.
September 10, 1984.
Rehearing Denied October 4, 1984.
*623 Edwin K. Theus, Jr., Theus, Grisham, Davis & Leigh, Monroe, for relators.
John D. Crigler, St. Joseph, for respondents.
BLANCHE, Justice.

FACTS
This is an action by two attorneys seeking fees from certain heirs who benefitted from the successful opposition of a will. The plaintiffs were retained by seven heirs of Linda S. Dubuisson to challenge the validity of a nuncupative will by public act. Plaintiffs were successful in obtaining for their clients a judicial recognition of the invalidity of the will. See, Succession of Dubuisson, 378 So.2d 1049 (La.App. 2nd Cir.1979), writ denied, 381 So.2d 509 (La. 1980).
Some time after the finality of the judgment of invalidity of the will and prior to the judgment of possession rendered on February 17, 1982, it was discovered that there were six more heirs entitled to inherit from Dubuisson. These heirs were named in the judgment of possession and are the defendants in this suit to recover attorneys' fees.
Three of the defendants filed an exception of no cause of action, contending that under Louisiana law an attorney cannot collect a fee from one who did not employ him and that the plaintiffs not only admitted in their petition that there was no such employment contract, but that they failed to allege any other basis for recovery. The trial court overruled the exception without reasons, and the appellate court denied supervisory writs. Upon application of the three defendants, this court granted supervisory writs to consider whether the petition alleges facts to support any possible theory of recovery under Louisiana law.

THE PETITION
An exception of no cause of action must be tried and reviewed solely on the face of the well-pled petition; no evidence is admissible to support or controvert this peremptory exception. La.C.C.P. art. 931. In addition, the principle of law that for purposes of the exception the allegations of the petition must be taken as true is so well established as to require no further citation of authority. Plaintiffs contend that a fair reading of their petition will disclose a cause of action, if not under an express contract, then under 1) unjust enrichment; or, 2) implied contract; or, 3) quasi-contract or negotiorum gestio; or, 4) the "fund doctrine."
A review of the petition discloses the following pertinent allegations:
(1) Plaintiffs were retained by seven heirs to challenge a will.
(2) Plaintiffs pursued their work under that contract "in the most diligent and professional manner possible," and this work was "exceedingly extensive and required a commitment to detail, preparation, research, analysis, preparation for trial, and trial on a level much greater than the ordinary case."
(3) Following trial, plaintiffs briefed the case extensively, appealed to the Second Circuit Court of Appeal, and filed a brief opposing an application for certiorari.

*624 (4) Following the successful challenge of the will and the denial of the writ application, plaintiffs continued to perform extensive legal work pertaining to the administration and preservation of the estate of Linda Dubuisson.
(5) "During their legal work," neither the plaintiffs nor their original clients were aware of the existence of the defendants in this suit nor that they were entitled to share in the succession.
(6) But for the work of petitioners, the defendants herein would never have become legally entitled to inherit and would have been excluded from a distribution of the assets of the succession.
(7) The work of the petitioners in challenging the validity of the will and, later, in administering and preserving the estate, inured to the direct benefit of the defendants.
(8) The defendants have refused to acknowledge any obligation whatsoever for the work performed on their behalf by the plaintiffs.

UNJUST ENRICHMENT
In 1967 this court recognized that the moral maxim contained in La.C.C. art. 1965 "that no one ought to enrich himself at the expense of another" provides the basis for an action for unjust enrichment. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967). We have also enumerated the five prerequisites necessary to support such an action: 1) there must be an enrichment, 2) there must be an impoverishment, 3) there must be a causal relationship between the enrichment and the impoverishment, 4) there must be an absence of justification or cause for the enrichment or impoverishment, and 5) there must be no other remedy at law. Minyard, supra; Edmonston v. A-Second Mortgage Company of Slidell, Inc., 289 So.2d 116 (La.1974); Hoover v. Hoover, 313 So.2d 358 (La.App. 4th Cir.1975); see also, A. Tate, The Louisiana Action for Unjustified Enrichment: A Study in Judicial Process, 51 Tul.L.Rev. 446 (1977).
The petition in this case does not support an action for unjust enrichment because, although plaintiffs allege that the defendants were enriched as the result of these attorneys' efforts, there is no allegation of a correlative impoverishment to the lawyers. There is no indication or allegation in the pleadings that the plaintiffs expended any more time, effort, or expenses in obtaining a result which "inured to the benefit of the defendants" than they would have in securing the same result for the benefit of their clients alone. Nor is there any allegation that the plaintiffs were impoverished by the loss or prevention of an expectation of gain, for by their own admission plaintiffs did not even know of the existence of the defendants until well after the completion of the opposition to the will and so could not have expected any gain or recompense from that quarter.

QUASI-CONTRACT
The Civil Code recognizes two principle kinds of quasi-contract, one being the transaction of another's business and the other the payment of a thing not due; from these quasi-contracts flow obligations without any agreement. La.C.C. art. 2293. In this case, the plaintiffs contend that the allegations of their petition support an action in negotiorum gestio, the management of another's affairs.
According to La.C.C. art. 2295, this quasi-contract comes into being when a person, the gestor, voluntarily undertakes to manage another's affairs, whether the recipient of the benefit of this management is aware of it or not. The gestor is under the obligation to act as a prudent administrator, La. C.C. art. 2298, and the one whose business has been well managed is under an obligation "to indemnify the manager in all personal engagements he has contracted," and "to reimburse him all useful and necessary expenses." La.C.C. art. 2299.
The petition in this case cannot support an action in quasi-contract for the simple reason that plaintiffs do not allege that their actions in contesting the will and, later, in administering and preserving the *625 estate were done with the benefit of the defendants in mind. Plaintiffs do not allege that they voluntarily undertook the management of the affairs of these defendants. On the contrary, the petition quite frankly admits that all of their actions were undertaken pursuant to an employment contract with other heirs and that they did not even know of the existence of these defendants until just prior to the rendering of the judgment of possession.
We do not mean to say that a mistake in the identity of the one for whom the gestor is acting will prevent assertion of the action in quasi-contract, but that again is not the case here. In a case of mistaken identity, the one whom the gestor believed he was acting for could escape liability by showing that he did not receive the benefit of the management, but the principle whose identity was unknown would still owe the obligation because his affairs had been well managed and he had received a benefit therefrom. In this case, however, the petition states that all of the plaintiffs' work was done pursuant to a contract with their clients; there was no "voluntary" assumption of the management of the affairs of the defendants named in this suit. The facts of this case are very similar to one decided by this court at the beginning of this century. In Succession of Kernan, 105 La. 592, 30 So. 239 (1901), this court held that the principles of negotiorum gestio did not apply when the attorneys were acting solely as the attorneys of the particular heirs in whose names they appeared in court, when those heirs did not pretend to act for any others. Citing Roselius v. Delachaise, 5 La.Ann. 481, the Kernan court stated:
[H]owever valuable the services of an attorney might be to a party in a suit in which he represented others having a similar interest, he cannot recover a fee from a party who has not employed or authorized anyone to employ him. 30 So. 239, 244.

THE FUND DOCTRINE
The "fund doctrine" originated as a common law theory of equity allowing an attorney to recover fees from one not his client in very limited situations. In 1893 this court recognized this exception to the general rule that a lawyer cannot recover a fee from one who has neither employed him nor authorized another to do so. See, McGraw v. Andrus, 45 La.Ann. 1073, 13 So. 630 (1893). Only once since then, in In re Interstate Trust & Banking Company, 235 La. 825, 106 So.2d 276 (1958), have we permitted recovery under this doctrine, and the prerequisites for such recovery were made explicit: An attorney may recover fees from those not his clients when that attorney alone and at his own expense has maintained a successful suit for the preservation, protection, or increase of a common fund, or of common property or who has created at his own expense, or brought into court, a fund in which others may share with him.
The petition now before us fails to state a cause of action under the fund doctrine on two counts: First, there is absolutely no allegation that the attorneys acted on their own or at their own expense. In fact, the contrary is implied in their admission that their actions were pursuant to a contractual obligation with other heirs. Second, the judicial recognition of the invalidity of a will does not preserve, protect, increase or create a common fund. The estate of Ms. Dubuisson existed and the heirs were seized as of the moment of her death whether the will purporting to dispose of that estate were valid or not. The efforts of these attorneys to have the will declared invalid did not increase or create an estate, but merely enlarged the class of heirs entitled to participate in the succession. See also, Succession of Kernan, supra.

DECREE
For the reasons above, the action of the district court is reversed and the plaintiffs' suit is dismissed for failure to state a cause of action. Plaintiffs are hereby given fifteen days to amend their petition if they so *626 desire in order to allege sufficient facts to support a valid cause of action.
REVERSED AND DISMISSED.
WATSON, J., concurs and assigns reasons.
LEMMON, J., dissents and will assign reasons.
WATSON, Justice, concurring.
I respectfully concur. See Baron v. Peter, 286 So.2d 480 (La.App. 1 Cir.1973).