**Patrick Joseph TURNER, et al.**

v.

**MURPHY OIL USA, INC.**

**This Document Relates to All Cases**

**No. CIV.A. 05–4206.**

United States District Court,
E.D. Louisiana,
Southern Division.

March 27, 2006.

Mickey P. Landry, David Ryan Cannella, Frank J. Swarr, Landry & Swarr, LLC,

New Orleans, LA, Joseph F. Rice, Ronald L. Motley, Motley, Rice, LLC, Mt. Pleasant, SC, Michael Gerald Calogero, Law Offices of Michael G. Calogero, L.L.C., Metairie, LA, Robert G. Creely, Amato & Creely, Gretna, LA, for Plaintiff.

George A. Frilot, III, Allen Joseph Krouse, III, Kerry J. Miller, Frilot Partridge Kohnke & Clements, Lafayette, LA, Edward F. Kohnke, IV, Patrick J. McShane, Frilot, Partridge, Kohnke & Clements, LC, New Orleans, LA, for Defendant.

## ORDER AND REASONS

FALLON, District Judge.

Before the Court is the Plaintiffs' Steering Committee's ("PSC's") Motion for An Order to Set Aside Fifteen Percent of the Gross of Any Settlements of Represented Persons Within Class Boundary for Class Counsel's Attorneys' Fees and Seven Percent of the Gross for Class Counsels' Costs. This motion came on for expedited hearing with oral argument on March 22, 2006. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

## I. Factual and Procedural Background

The Court has recited the central facts of this case in other orders, and will not elaborate in detail here. Suffice it to say that, in the aftermath of Hurricane Katrina and accompanying flooding, Murphy Oil USA, Inc. notified the federal government that on September 3, 2005 approximately 25,110 barrels of crude oil escaped from a 250,000–barrel above-ground storage tank at Murphy Oil's refinery in St. Bernard Parish, Louisiana. Some of this oil traveled into the neighborhoods surrounding the refinery.

As a result, twenty-seven consolidated class actions were filed on behalf of several thousand people claiming damages in connection with the oil spill. Plaintiffs are homeowners and business owners in St. Bernard Parish who claim they have suffered damage as a result of the spill.

On January 30, 2006, the Court certified these cases as a class action and granted the Plaintiffs' Motion for Class Certification for all persons living within the area described in the class definition. At that time, the Court appointed Sidney Torres to serve as Plaintiffs' Liaison Counsel, and additionally appointed an Executive Committee and Plaintiffs' Steering Committee.

Since the Court's order certifying the class, a number of cases have been filed by individuals who reside outside the class boundary and by individuals who have opted out of the class action. Also, Murphy Oil continues to settle claims of individuals who have opted out of the class action. The case was bifurcated into a liability phase to be followed by a damage phase if necessary. A discovery plan has been approved by the Court and is being implemented by the Plaintiffs' Committee and Defendant's Committee.

On March 15, 2006, the Plaintiffs' Steering Committee filed the instant Motion for An Order to Set Aside Fifteen Percent of the Gross of Any Settlements of Represented Persons Within Class Boundary for Class Counsel's Attorneys' Fees and Seven Percent of the Gross for Class Counsels' Costs. The Court has received oppositions to this motion from Defendant Murphy Oil and from several attorneys for individual plaintiffs, John Futrell and Thomas Keiffer.

## II. PSC's Motion to Set Aside Funds

The PSC asserts that its motion is directed toward two sets of claimants—1) individuals who have opted out, retained lawyers, and filed lawsuits, and 2) individuals who have opted out and have retained counsel for purposes of settlement. The motion is not aimed at individuals who

accept a settlement offer "that would have been made regardless of class certification[,]" according to the PSC. Thus, the PSC's motion does not cover settlements made or to be made by individuals directly with Murphy without the assistance of counsel.

The PSC cites to numerous cases that state two general propositions, first, that attorneys are entitled to compensation for their work, and, second, that attorneys are entitled to compensation for common-benefit work in a class action setting. The PSC seeks an order from the Court setting aside 15% of the gross of settling claimant's attorney's fee and 7% of the gross of the settling claimant's recovery as a common-benefit assessment.

Thomas Keiffer is an attorney who has advertised his services for settlement of claims of individuals who have opted-out of the class action. *See* Exhibit A to the PSC's Motion. In his opposition, Keiffer states that the discretion of the Court to assess common-benefit fees is an equitable one, and that the assessments requested by the PSC would be grossly inequitable. Keiffer points out that the PSC requests 22% of every settlement made from this point forward. Keiffer further argues that the attorney-client relationship between the PSC and the class is a legal fiction, and that a legal fiction should not disturb a real attorney-client relationship that an individual claimant wishes to establish. Keiffer argues that the PSC's assessment 1) impairs existing contracts, in violation of the Contracts Clause of the U.S. Constitution, 2) is anti-competitive, in violation of the Sherman Act, and 3) is unsubstantiated under Louisiana Supreme Court precedent, in that the PSC fails to allege that they acted on their own at their own expense and fails to allege that they have

protected or created a common fund. Keiffer argues that there has been no "common benefit" as of yet in this matter; therefore, no common-benefit assessment is appropriate.

John Futrell represents a group of individuals who have opted out of the class action and filed their own lawsuit, *Tammy Bouvier, et al. v. Murphy Oil USA, Inc.*, No. 06–557. In Futrell's opposition, he argues that the PSC has not demonstrated that its efforts inure to the benefit of the class, and thus, the "common benefit doctrine" allowing assessments would not apply to this case. Moreover, Futrell argues that there is no "common fund" at this point, so there is no common benefit. Futrell argues that his plaintiffs claim different ent damages than those claimed by the class,[1] and as such, he is not relying upon any common-benefit work. Futrell also argues that the common-benefit assessments constitute fee splitting and as such are unethical under Louisiana ethics rules. Futrell also argues that the 22% assessment is simply unreasonable and is profiteering from the victims of a tragedy.

Murphy also objects to the PSC's Motion. Like Futrell and Keiffer, Murphy argues that there is no common fund in this case, and that the common benefit doctrine should not apply on those grounds. Murphy further discusses the role of an attorney in negotiating a settlement within its out-of-court Settlement Program. Murphy argues that it arrives at a settlement figure through a mathematical formula based on the location and number of people in the household, and that the attorney assisting a claimant is not in a position to negotiate a higher settlement than would otherwise be offered through the program. According to

---

**1.** These damages include certain damages, like fear of cancer, that the Court has dismissed from the class action in its prior rulings. Whether claims for these damages are viable in Futrell's cases is unclear at this point.

Murphy, the attorney's entire role is to inform the claimant of his or her rights regarding the class action and settlement. Murphy argues that any assessment upon settlements made through its Settlement Program are therefore unfair: the assessments would punish people who are seeking independent information about their litigation rights and would force them to settle without counsel. Murphy does not appear to object to assessments made upon lawyers like Futrell who have filed individual suits against Murphy. Moreover, Murphy objects to the 22% assessment figure as unreasonable and baseless.

### III. Law and Analysis

■ Under what is generally termed the "American rule," every litigant is responsible for the payment of his or her own attorney's fees. If there is no attorney-client relationship, no attorney's fees are generally owed. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 245, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). However, in certain settings, the American rule creates the problem of free riding, that is, when individuals who benefit from the litigation avoid sharing the full burden and expense of litigation by relying on the work of others. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) (citing *Trustees v. Greenough,* 105 U.S. 527, 26 L.Ed. 1157 (1881) and *Central R.R. & Banking Co. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885)).

■ Thus, to avoid the problem of free-riding, the U.S. Supreme Court over 125 years ago approved the common benefit doctrine, which provides that when the efforts of a litigant or attorney create, preserve, protect, increase, or discover a common fund, all who benefit from that fund must contribute proportionately to the costs of the litigation. *Boeing,* 444 U.S. at 479, 100 S.Ct. 745; *Pettus,* 113 U.S.

at 123, 5 S.Ct. 387; *Greenough,* 105 U.S. at 532–33, 105 U.S. 527. "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing,* 444 U.S. at 478, 100 S.Ct. 745. *See also* Manual for Complex Litigation (Fourth) § 14.121 (2004) (discussing the American Rule and the common-benefit exception in complex cases).

■ The Louisiana Supreme Court has recognized the common benefit doctrine and has developed the following test to determine whether attorneys are owed funds under the doctrine. *Kirkpatrick v. Young,* 456 So.2d 622, 625 (La.1984). First, the attorney must demonstrate that he acted 1) on his own and 2) at his own expense. *Id.* Second, the attorney must show that he maintained a successful suit for the preservation, protection, or increase of a common fund. *Id.*

The Fifth Circuit Court of Appeals has applied this doctrine in class actions and multi-district litigation cases. *Forbush v. J.C. Penney Co.,* 98 F.3d 817, 823–25 (5th Cir.1996) (approving of district court's use of common benefit doctrine in ERISA class action); *In re Air Crash Disaster at Florida Everglades,* 549 F.2d 1006, 1021 (5th Cir.1977) (finding the doctrine could apply to an MDL).

In accordance with the common benefit doctrine, it has been a common practice in the federal courts to impose set-asides in the early stages of complex litigation in order to preserve common-benefit funds for later distribution. *See, e.g., In re Linerboard Antitrust Litig.,* 292 F.Supp.2d 644, 668–69 (E.D.Pa.2003) (imposing percentage set-aside in antitrust MDL for lead counsel for plaintiffs); *In re MGM Grand Hotel Fire Litig.,* 660 F.Supp. 522, 525 (D.Nev.1987) (imposing set-aside for costs and expenses of plaintiffs' liaison

committee); *In re Diet Drugs prod. Liab. Litig.*, No. 1203, 1999 WL 124414, at *2 (E.D.Pa. Feb. 10, 1999) (providing for a 9% set-aside in a pharmaceutical MDL for common benefit work); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, MDL No. 1014, 1996 WL 900349, at *3 (E.D.Pa. June 17, 1996) (imposing 5% assessment for common benefit costs). It is important to note that these are set-asides, not disbursements: no amounts are paid to attorneys from the set-aside fund until the attorneys demonstrate that they have worked for the common benefit. *See Florida Everglades*, 549 F.2d at 1021 (rejecting assessment for common benefit because the district court did not determine the common benefit and reasonableness of liaison counsel's services).

■■■ In class action suits filed in federal court, the district court's power to set aside funds derives from the court's inherent power to manage its own docket and its power under Rule 23(d) of the Federal Rules of Civil Procedure to make such orders as necessary to manage the class action. *Id.* at 1012–13. Because the district court has the power to designate lead counsel for the class, the court has the complementary power to ensure that lead counsel are compensated for their work for the common benefit. *Id.* at 1016 ("if lead counsel are to be an effective tool the court must have means at its disposal to order appropriate compensation for them. The court's power is illusory if it is dependent upon lead counsel's performing the duties desired of them for no additional compensation"). However, prior to distribution to attorneys, the Court also must evaluate the reasonableness of the set-aside funds and the value of the attorneys' work product. *Id.* at 1021.

■■ Contrary to the arguments of Futrell, Keiffer, and Murphy Oil, the fact that there is no "common fund" at this stage of the litigation is of no moment. *Id.* at 1018

("there is not a fund in the sense of identified items already in the hands of a court appointee, *but this is not a necessity*") (emphasis added). The set-asides would be imposed to ensure that there will be adequate funds available if the plaintiffs are successful. If the funds to be set aside are excessive, any surplus will be returned to the attorneys and their clients. Ultimately, the PSC and other attorneys will need to demonstrate the existence of a common benefit to receive payment; however, that date has not yet arrived.

Murphy and Keiffer also object that the imposition of a set-aside would burden a plaintiff's right to opt out of this litigation and would burden an individual's choice of his or her own counsel. The Court believes that the *Linerboard* case is persuasive on these two issues. Regarding the argument that set-asides burden the right to opt-out, the court in *Linerboard* found no such burden existed because the opt-outs in that case clearly benefited from the work of liaison counsel, who had completed substantial discovery prior to the claimants' opting out. 292 F.Supp.2d at 662–63. In this case, the PSC will also have to demonstrate that their work is for the common benefit to receive compensation from the set-aside funds.

Regarding the argument that the set-asides burden the plaintiffs' rights to counsel of their choice, the court in *Linerboard* found that the substantial benefits of consolidation and the appointment of lead counsel outweighed the lesser interest that a plaintiff may have in obtaining his or her own representation. *Id.* at 663. The efficiencies in case management from appointment of liaison counsel cannot be understated: the district court's "managerial power is not merely desirable. It is a critical necessity." *Florida Everglades*, 549 F.2d at 1012. All of the parties involved have expressed a desire for prompt

resolution of these consolidated cases. To make that happen, the Court must work through the appointed counsel to coordinate discovery and trial preparation efforts. Without that tool, management of this litigation would be difficult and could cause substantial delays. The Court cannot expect the appointed counsel to work without compensation. Therefore, set-asides are appropriate in this case to ensure that counsel are remunerated for their efforts. However, the Court cannot accept the percentages requested by the PSC. The Court will set common-benefit attorneys' fees that are reasonable in this matter, with the caveat that a detailed inquiry into common-benefit work shall precede any distribution of these funds. It is first necessary to select the proper method for determining these common-benefit fees.

■ Attorneys' fees in a case of this sort can be computed by means of the "lodestar" method, a method derived from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974) *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). Under the lodestar method, the fee is based on the number of hours reasonably required, multiplied by the applicable rate in the relevant market for the attorney's services. Manual for Complex Litigation (Fourth) §§ 14.121 & 14.122 (2004). As the Federal Judicial Center has noted, "[i]n practice the lodestar method is difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation. In addition, the lodestar method creates inherent incentive to prolong the litigation until sufficient hours have been expended." Manual for Complex Litigation (Fourth) § 14.121 (2004). In light of the problems that have emerged with the lodestar method, the majority of Courts of Appeals have adopted the percentage-fee method in common-fund cases, either as a primary or

secondary method of calculating fees. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49–50 (2d Cir.2000) (adopting percentage-fee method with lodestar method as cross-check); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (stating that the district court had discretion to apply either lodestar or percentage-fee method); *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir.1995) (same); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821–22 (3d Cir. 1995) (stating that the percentage-fee method should be the primary method); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir.1994)(stating that the district court had discretion to apply either lodestar or percentage-fee method); *Rawlings v. Prudential–Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir.1993) (same); *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1271 (D.C.Cir.1993) (holding that the percentage-fee method is the appropriate method in common-benefit cases); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572–73 (7th Cir. 1992) (disapproving of the lodestar method as applied in that case); *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir.1991) (holding that the percentage-fee method should be applied to common-benefit cases); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454–55 (10th Cir.1988) (finding percentage-fee method could be applied by district court in its discretion).

■ The Fifth Circuit has not explicitly adopted the percentage-fee method, but it has not explicitly rejected it either. *See Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 852–53 (5th Cir.1998); *Longden v. Sunderman,* 979 F.2d 1095, 1099–1100 (5th Cir.1992). The percentage-fee method seems to allow considerable flexibility for the district court to devise a method

for fixing appropriate fees in common benefit cases. Thus, this Court will use the percentage method in computing common benefit fees. Of course, the percentage should not be completely arbitrary, devoid of reality, or inconsistent with the usual fees for the type of case involved. In short, there is no one percentage that should apply to all cases. Each case should be analyzed on its own basis.

██ In this case, the Court finds that a more appropriate percentage is twelve percent of the gross monetary recovery. Ten (10) percent shall be deemed fees to be subtracted from the attorneys' fees portion of the funds attributed to the particular case, and two (2) percent shall be deemed costs to be subtracted from the client's portion of the funds. This seems fair to both the attorneys and their clients in the individual cases, for the following reasons. First, the usual fee in this type of case is between 33.33% and 40% of the recovery. If an attorney refers a case to another attorney, the referring attorney would usually only retain one-third of the fee as referral counsel. In this case, counsel doing common-benefit work are similar to referral counsel. The individual's counsel would receive at least two-thirds of the fee. Second, the client would pay no additional attorneys' fees and would have their costs capped at 2%. Third, class counsel or those receiving common benefit funds would be adequately compensated but not overly compensated. Furthermore, these amounts are consistent with what has been awarded in other cases. *See* Manual for Complex Litigation (Fourth) § 14.121 (2004) (citing two studies of fee awards in class action cases, one of which found fee percentages ranging from 4.1% to 17.92%, the other of which found fee percentages ranging from 5% to 22%, with 8% as the median award). For these reasons and others, the above fee seems appropriate in this case.

## IV. Conclusion

Accordingly, the Motion for An Order to Set Aside Fifteen Percent of the Gross of Any Settlements of Represented Persons Within Class Boundary for Class Counsel's Attorneys' Fees and Seven Percent of the Gross for Class Counsels' Costs of the Plaintiffs' Steering Committee is GRANTED IN PART insofar as the Court approves of a percentage set-aside; however the motion is DENIED IN PART regarding the percentages suggested by the PSC. The Court issues the following Pre–Trial Order Number 8, which imposes set-asides in the amount of 10% as fee and 2% as costs as set forth in the Order.

### PRETRIAL ORDER NO. 8

This order is entered to provide for the fair and equitable sharing among plaintiffs of the cost of special services performed and expenses incurred by attorneys acting for case administration and common benefit of all plaintiffs in this class action.

### 1. Plaintiffs' Litigation Expense Fund to be Established.

Plaintiffs' Liaison Counsel (Sidney Torres) and Defendant's Liaison Counsel (Kerry Miller) are directed to establish an interest-bearing account at an appropriate financial institution to receive and disburse funds as provided in this Order. Counsel shall agree on and designate an escrow agent for this purpose. These funds will be held as funds subject to the direction of the Court. No party or attorney has any individual right to any of these funds except to the extent of amounts to be directed to be disbursed to such person by order of the Court. These funds will not constitute the separate property of any party or attorney or be subject to garnishment or attachment for the debts of any party or attorney except when and as directed to be disbursed as provided by court order to a specific person.

### 2. Set Asides

a. All plaintiffs and their attorneys who either agree or have agreed, for monetary consideration, to settle, compromise, dismiss, or reduce the amount of a claim or, with or without trial, recover a judgment for monetary damages or other monetary relief, including such compensatory and punitive damages, with respect to the Murphy Oil spill of September 2005 in St. Bernard Parish, Louisiana, are subject to a set-aside of the "gross monetary recovery," as provided herein.

b. Defendant is directed to withhold this set-aside from amounts paid to plaintiffs and their counsel, and to pay the set-aside directly into the fund as a credit against the settlement or judgment. If for any reason the set-aside is not or has not been so withheld, the plaintiff and his counsel are jointly responsible for paying the set-aside into the fund promptly.

c. No orders of dismissal of any plaintiff's claim, subject to this order, shall be filed unless accompanied by a certificate of Plaintiffs' and Defendant's counsel that the set-aside has been withheld and deposited into the fund.

d. In measuring the "gross monetary recovery":

  (1) Exclude court costs that are to be paid by the defendant.

  (2) Exclude any payments to be made by the defendant on an intervention asserted by third parties, such as to physicians, hospitals, and other health-care providers in subrogation related to treatment of plaintiff.

  (3) Include the present value of any fixed and certain payments to be made in the future.

e. This obligation attaches in the following instances:

The set-aside shall apply to cases currently pending or later filed in, transferred to, or removed to, this Court as well as unfiled cases treated as the consolidated case *Patrick Joseph Turner v. Murphy Oil USA, Inc.*, Civil Action No. 05–4206, and includes claimants who reside within the class boundary who are included in the class action or who have opted out of the class action and are represented by counsel. This set-aside applies to all settlements made and judgments entered on or after the date on which this Order is signed. The set-aside in these cases shall be twelve (12) percent of the "gross monetary recovery." Ten (10) percent shall be deemed fees to be subtracted from the attorneys' fees portion of individual fee contracts, and two (2) percent shall be deemed costs to be subtracted from the client portion of individual fee contracts.

### 3. Disbursements

a. Upon order of the Court, payments may be made from the fund to attorneys who provide services or incur expenses for the joint and common benefit of plaintiffs in addition to their own client or clients. Attorneys eligible are limited to Plaintiffs' Liaison Counsel and members of the Plaintiffs' Steering Committee, other attorneys called upon by them to assist in performing their responsibilities, and other attorneys who can demonstrate that they are entitled to *common-benefit reimbursement*. All time and expenses are subject to proper and timely submission to the accounting firm provided for this use in the Court's prior orders.

b. Payments will be allowed only to entities for special services performed, and to reimburse for special expenses incurred, for the joint and common benefit of all plaintiffs.

c. The fund will not be used to pay for services and expenses primarily related to a particular case, even if such activity results in some incidental or consequential benefit to other plaintiffs.

d. Payments will not exceed the fair value of the services performed or the reasonable amount of the expenses incurred, and, depending upon the amount of the fund, may be limited to a part of the value of such services and expenses.

e. No amounts will be disbursed without review and approval by the Court after a scheduled and duly-noticed hearing or such other mechanism as the Court may order. Defense counsel shall provide at least quarterly notice to the Court or its designee the names and docket numbers (if any) of the cases and plaintiffs for which it has made a set-aside. Defendant in its discretion may make these disclosures *in camera* and under seal. Details of any individual settlement agreement, individual settlement amount, and individual amounts deposited into escrow shall be confidential and shall not be disclosed to the Plaintiffs' Steering Committee, the Court, or the Court's designee. However, monthly statements from the escrow agent shall be provided to the Plaintiff's Liaison Counsel, Defendant's Liaison Counsel, the Court, and the Court's designee showing only the aggregate of the monthly deposits, disbursements, interest earned, financial institution charges, if any, and current balance.

f. If the fund exceeds the amount needed to make payments as provided in this order, the Court may order a refund to those who have contributed to the fund. Any such refund will be made in proportion to the amount of the contributions.