DECISION
Before this Court is the motion of Plaintiffs' Steering Committee ("PSC") to establish a fund to compensate attorneys who work for the common benefit of all plaintiffs in this multi-case products liability litigation. Two plaintiffs' attorneys who are not part of the PSC object to the motion.
 I Facts and Procedural History
By order of the Presiding Justice, dated March 8, 2007, all filings in Providence County Superior Court alleging personal injuries from Kugel Mesh hernia repair patches were assigned to this Court for multi-case management. (Administrative Order No. 2007-6.) The order authorizes this Court to dispose of any and all pre-trial motions related to this litigation and to preside over trials, should any occur. Id. The order further empowers this Court to "issue special orders for the due administration of these causes of action." Id.
Pursuant to this authority, on July 10, 2008, this Court entered an order establishing an eight seat Plaintiffs' Steering Committee to coordinate discovery and motion practice in the approximately 1000 individual Kugel Mesh cases currently pending before this Court. (Order Appointing Plaintiffs' Steering Committee, I (1-7).) *Page 2 
The Court also designated Plaintiffs' Liaison Counsel to act as the primary conduit between the Court and plaintiffs' counsel. Id. at II(8).
The PSC and Liaison Counsel represent that they have incurred expenses and performed work for the common benefit of all plaintiffs in this litigation. To date, the members of the PSC have conducted a significant amount of discovery and have engaged in extensive motion practice before this Court.
To compensate and reimburse the PSC, Liaison Counsel, and other authorized attorneys performing "common benefit work," the PSC has proposed a 12% assessment (8% for attorney's fees and 4% for costs) on the "gross monetary recovery" of plaintiffs who settle with or obtain a judgment from the defendants. (Proposed Order at 2(A).) The Proposed Order directs the defendants to withhold the assessment from any amounts paid to a plaintiff in the following four types of cases:
 i. any case pending in the Coordinated Litigation;
 ii. any unfiled case where the plaintiffs attorney and/or his or her firm has executed an agreement to cooperate with the PSC in the Coordinated Litigation and to pay the assessment;
 iii. any case in which a member of the PSC has a fee interest whether or not that case is filed or unfiled in state or federal court; and
 iv. any case in which counsel receives a substantial benefit from the work of the PSC or receives assistance from the PSC which provided a direct benefit to counsel, whether or not that case is filed or unfiled in state or federal court.[1] Id. at 2(C). *Page 3 
The Proposed Order also provides that if there is a dispute as to whether a particular plaintiff falls under one of these four types of cases, a special master or the Court may be asked to resolve the issue.[2] Id. at 2(E).
Under the Proposed Order, the Defendants are directed to pay the 12% assessment into a common benefit fund as a credit against any settlement or judgment. Id. at 2(D). A special master jointly recommended by the PSC and Defendants shall manage the common benefit fund and assure confidentiality. Id. at 1(B)-(C). Disbursements from the common benefit fund to compensate attorneys who provide "common benefit work" are made only upon review and approval of this Court. Id. at 4(D). The Proposed Order details the various reporting requirements of attorneys intending to apply for common benefit funds and instructs that
 [o]nly time on matters common to all claimants in the Coordinated Litigation ("common benefit work") will be considered in determining fees. No time spent on developing or processing individual issues in any case for an individual client (claimant), with the exception of bellwether, ADR, or neutral evaluation cases, will be considered or should be submitted. Id.
at 5(C)(i).
The Proposed Order further provides that should the funds collected exceed what is necessary to compensate or reimburse applicants for their common benefit work, the Court may order a refund to those who contributed. Id. at 4(E).
The first version of the Proposed Order was presented to this Court at a December 9, 2008 hearing. At the time, Liaison Counsel represented that it had been unanimously agreed to by all plaintiffs in the litigation. (Tr. 8.) Indeed, Liaison Counsel assured the *Page 4 
Court that "every firm known to represent a plaintiff in this litigation was consulted with, had agreed to, and was a signatory of the Proposed Order."
At the time, however, the Defendants objected to the Proposed Order on two grounds. The first objection concerned settlement confidentiality. Specifically, Defendants were concerned that if they were required to pay 12% of any settlement into a common benefit fund, the PSC would easily be able to deduce the amounts of individual settlements. The PSC subsequently addressed this concern by adding language to the Proposed Order that provides for an independent escrow agent to keep individual settlement amounts confidential. See Proposed Order at 1(B)-(C). The Defendants' second objection concerned the requirement that they, rather than the individual plaintiffs in this litigation, assume responsibility for withholding assessments. The Defendants no longer press this second objection and have assented to the Proposed Order as drafted.
Upon representation of counsel, sometime after the December 9, 2008 hearing, two attorneys, John Deaton and Steven M. Johnson, filed approximately sixty Kugel Mesh cases in this Court. These attorneys are not members of the PSC, nor are they signatories of the Proposed Order. When they learned of the Proposed Order, they strongly objected. On March 24, 2009, the Court heard vigorous arguments on the issue.
The objecting attorneys raise essentially three arguments against entry of the Proposed Order. First, they caution this Court not to unilaterally enter an assessment order while parallel proceedings are pending in a federal MDL without seeking to coordinate with the federal MDL court. Second, they argue that assessing a common benefit fee without offering notice and an opportunity to be heard violates the U.S. Constitution's guarantee of due process. Third, they object that the requested 12% *Page 5 
assessment is two to three times higher than what is normal in complex litigation. The Court will address each argument in sequence.
 II Standard of Review
Rhode Island adheres to the firmly rooted "American rule," which requires each litigant to pay his or her own attorney's fees absent statutory authority or contractual liability. Moore v. Ballard,914 A.2d 487, 489 (R.I. 2007) (citing Eleazer v. Ted Reed ThermalInc., 576 A.2d 1217, 1221 (R.I. 1990)). The American rule is not without exception, however, as our Supreme Court has recognized that equity sometimes demands departure from the general rule. See Vincentv. Musone, 574 A.2d 1234, 1235 (R.I. 1990) (recognizing the "inherent power to fashion an appropriate remedy that would serve the ends of justice); see also Truk Away of Rhode Island, Inc. v. Macera Bros. ofCranston, Inc., 643 A.2d 811, 817 (R.I. 1994).
The common-fund exception to the American Rule is founded upon the principle that "persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." D. Herr, Manual for ComplexLitigation, § 14.121, p. 248 (4th ed. 2008) (quotingBoeing Co. Van Gemert, 444 U.S. 472, 478 (1980)). The exception is "grounded in the equitable powers of the courts under the doctrines of quantum meruit and unjust enrichment." Id. The common-fund doctrine has long been recognized by our Supreme Court in the context of land partition actions. Moore v. Ballard, 914 A.2d 487,490 (R.I. 2007) ("where a suit for partition was necessary, and its benefit inured to all the parties, the cost of procuring it should not be *Page 6 
thrown wholly upon the complainant, but should be borne in part by those who share in the benefit") (quoting Robinson v. Robinson,24 R.I. 222, 223, 52 A. 992, 993 (1902)).
"While class actions furnish the most fertile ground for the [common benefit] doctrine, its reach is not limited to such cases." In reThirteen Appeals Arising Out of San Juan Dupont Plaza Hotel FireLitigation, 56 F.3d 295, 305, n. 6 (1st Cir. 1995). For instance, in litigation where a large number of cases with common issues are consolidated, "stony adherence to the American rule invites a serious free-rider problem." In re Nineteen Appeals Arising Out ofSan Juan Dupont Plaza Hotel Fire Litigation, 982 F.2d 603, 606
(1st Cir. 1992). "[E]ach attorney, rather than toiling for the common good and bearing the cost alone, will have an incentive to rely on others to do the needed work, letting those others bear all the costs of attaining the parties' congruent goals." Id. Courts have attempted to minimize the free-rider problem through measures "reasonably calculated to avoid `unjust enrichment of persons who benefit from a lawsuit without shouldering its costs.'" Id.
(quoting Catullo v. Metzner, 834 F.2d 1075, 1083
(1st Cir. 1987)). Typically, courts do this by "specially compensating those who work for the collective good." Id. The practice, while criticized by some, [3] is widely employed in federal multi-district litigation. See Manual for ComplexLitigation, § 20.312, p. 321 (stating that "MDL judges generally issue orders directing that defendants who settle MDL-related cases to contribute a fixed percentage of the settlement to a general fund to pay national counsel[]"); In re Zyprexa Prods. Liab. Litig.,467 F. Supp. 2d 256, 267 (E.D.N.Y. 2006) (stating that "it has been a common practice in the federal courts to *Page 7 
impose set-asides in the early stages of complex litigation in order to preserve common-benefit funds for later distribution") (citation omitted).
 III Analysis A Coordination with the Federal MDL Court
The objecting attorneys argue that it would be unprecedented for a state court such as this to enter an order of the type proposed, while parallel proceedings are pending in federal MDL, without first attempting to coordinate with the federal MDL court. The preferable method, the objecting attorneys argue, is that advanced by theManual for Complex Litigation, which advocates for federal and state cooperation in setting common-benefit fees. Section 20.312. The objecting attorneys caution that if this Court were to unilaterally enter the Proposed Order, and the federal MDL court were to reject or enter a different assessment percentage, it would likely lead to forum shopping and confusion.
The Court agrees with the objecting attorneys that federal-state coordination on this issue is preferable. As of the March 24, 2009 hearing, the PSC had not made a request to the federal MDL court to enter an assessment order. This Court received correspondence from the PSC that a Motion for Assessment Order was filed in federal court on June 5th, 2009. Since then, this Court has communicated with the federal MDL court regarding this issue. The objecting attorneys may rest assured that reasonable efforts are being made to achieve consistency. *Page 8 
 B Due Process
The objecting attorneys next argue that the Proposed Order violates their right to Due Process guaranteed by the Federal Constitution. Specifically, the objecting attorneys contend that they have a property interest in their contingency fee contracts with their individual clients, that an assessment "takes" a portion of this contracted fee to subsidize the work of the PSC, and that despite this deprivation, they have not been afforded a meaningful opportunity to be heard. While the Court permitted the parties to ague this issue at length on March 24, 2009, the opposing attorneys call for a full evidentiary hearing on the appropriateness of the proposed percentage and the amount of "common benefit work" that has thus far been performed.
When reviewing the constitutionality of pre-trial procedures, our Supreme Court has looked to the three-part test articulated by the United States Supreme Court in Mathews v. Eldridge, 424 U.S. 319,335 (1976); see City of Pawtucket v. Pimental, 960 A.2d 981,988-989 (R.I. 2008); John J. Orr Sons, Inc. v. Waite,479 A.2d 721, 723 (R.I. 1984). Specifically, the three factors to be considered in determining whether pretrial procedures have violated due process are "(1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used and the possible value, if any, of additional or substitute procedural safeguards, and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." Waite, 479 A.2d at 723-24 (citingMathews, 424 U.S. at 335). *Page 9 
The first Matthews factor requires an identification of the "private interest that will be affected by the official action."424 U.S. at 335. In this case, the objecting attorneys' contingency fee contracts with their clients is the interest that would be affected by a court-sanctioned assessment fee. As explained at the March 24, 2009 hearing, an 8% assessment on attorney's fees could reduce an attorney's 33.3% contracted contingency fee to 25% without that attorney's consent. (Tr. 50.) Since the objecting attorneys jointly represent over sixty plaintiffs in this litigation, there is little question that large sums of money may be at issue and that the degree of potential deprivation would be substantial. See In re Thirteen Appeals, 56 F.3d at 295
(finding that individually retained plaintiff's attorneys have "a salient private interest in the fees due them for services rendered"). Therefore, the Court finds that the affected interest here is significant.
The second Matthews factor requires the Court to consider the fairness of the pretrial procedure and "the probable value, if any, of additional procedural safeguards." 424 U.S. at 335. As mentionedsupra, the Proposed Order requires Defendants to hold back 12% of any settlement or judgment from any plaintiff who has a case "pending in the Coordinated Litigation." (Proposed Order at 2(C)(i).) The 12% withholding also applies to claims that have not yet been filed, provided plaintiff's counsel "receives a substantial benefit from the work of the PSC or receives assistance from the PSC which provides a direct benefit to counsel." Id. at 2(C)(iv). The version before the Court at the March 2009 hearing contained an even lower threshold for triggering the assessment. Under that version, the plaintiff merely needed to receive "any benefit" from the PSC for the 12% withholding to apply. This prompted the objecting attorney present at the *Page 10 
hearing to query, "does that mean one corporate depo[sition] triggers the 12 percent?" (Tr. 56, Mar. 24, 2009.)
The 12% withholding is sequestered in an escrow account managed by a special master. (Proposed Order, 1(B)-(C).) Attorneys who have been authorized by the PSC to perform common benefit work may then apply to the Court for compensation from the fund. (Proposed Order, 4(A).) Attorneys applying for funds are required to keep detailed accountings of their time and expenses. Section 6(C)(ii) (attorneys must "keep a daily record of their time spent in connection with common benefit work on this litigation, indicating with specificity the hours and particular activity"). Time must be kept in one-tenth increments. Section 6(C)(iii). The Proposed Order also details the type of litigation expenses that are reimbursable. Section 6(D).
The Court is then charged with reviewing the applicants' submissions. Section 4(D). The Proposed Order provides that "[n]o amounts will be disbursed without review and approval by the Court or such other mechanism as the Court may deem just and proper under the circumstances." Id. Any amounts remaining in the common benefit fund after all claims have been settled will be returned to the attorneys who paid a portion of their fees into the account. Section 4(E).
The Proposed Order, as it existed at the March 2009 hearing, did not provide an opportunity for non-signatories to challenge whether a 12% assessment would be fair in the circumstances. Once a non-signatory attorney received "any benefit" from the PSC's work, triggering the 12% withholding, the only way under the Proposed Order he or she could be assessed less than 12% was if the amount collected in the common benefit fund "exceeds the amount needed to make all payments" and the Court orders a refund. Id. *Page 11 
The non-signatory attorneys objected that this is unfair because they believe many of the expenses being incurred by the PSC are unnecessary. As explained in their memorandum, the objecting attorneys assert that this litigation is not as complex as the PSC contends, nor as complex as other mass torts:
 [A]n individual Kugel Mesh device with a ring break is almost exactly analogous to the wood-spooked [sic] wheel that collapsed under Mr. Macpherson's Buick automobile almost a century ago. See Macpherso v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916) (Cardozo, J.). It is a classic Restatement of Torts Section 402A or UCC breach of warranty case. . . . It would, in fact, be possible to try a ring break case almost immediately — the plaintiff need only . . . prove that the product failed and caused his or her injuries — the knowledge of the defendant, how the product was marketed, etc., may only be relevant to the issue of punitive damages, which many states limit or disallow completely. . . . (Objecting Attorneys' Mem. 7-8.)
The objecting attorneys insist that a plaintiff with a strong case may achieve a fair settlement with minimal discovery and, therefore, it would be "highly inappropriate to impose a tax on that plaintiff and his counsel [for the PSC] to do a huge amount of discovery that may, in fact, turn out to be not very useful to that plaintiff." Id.
The Court is mindful that the PSC and Liaison Counsel have shouldered the lion's share of expense and work thus far in this litigation. The Court also acknowledges that the objecting attorneys and all plaintiffs who subsequently file claims, but who are not signatories to the Proposed Order, will likely benefit to some degree from the work that is being performed. The fundamental requirements of due process, however, demand that the objecting attorneys, and all non-signatories of the Proposed Order, be given the opportunity to be heard "at a meaningful time and in a meaningful manner" on the issue of whether a 12% assessment is fair in a given set of circumstances. Matthews, 424 U.S. *Page 12 
at 333. The Court will provide that opportunity subsequent to Defendants' withholding a 12% assessment in a non-signatory's case, but before such funds are distributed to attorneys who have performed common benefit work, or at such time as the Court directs. Indeed, the most recent version of the Proposed Order now appears to contemplate the opportunity for such a hearing. Specifically, ¶ 2(E) provides in pertinent part:
 In the event there is a dispute as to whether a case should be [subject to the Order], Defendants shall provide Plaintiffs' Liaison Counsel with a list of cases that the Settling Plaintiff's Attorney has resolved with the Defendants and Plaintiffs' Liaison Counsel shall resolve the matter with the particular Settling Plaintiff's Attorney either informally or upon motion to the Special Master, unless the Settling Plaintiff's Attorney or Plaintiffs' Liaison Counsel requests that it be considered by the Court.
As to the type of hearing, due process does not require a full evidentiary hearing for all fee disputes. See In re ThirteenAppeals, 56 F.3d at 303 (holding that parties to a fee dispute do not have the right to an evidentiary hearing on demand). Nevertheless, the Court will provide non-signatories "a fair opportunity to present relevant facts and arguments to the court, and to counter the opponents' submissions." Id. at 302 (quoting Aoude v. Mobile OilCorp., 862 F.2d 890, 894 (1st Cir. 1988)). The Court will then determine the appropriate percentage, if any, to permit as an assessment and order the remainder refunded to the contributing attorney.
The third Mathews factor assesses the interest of the government and "the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." Waite,479 A.2d at 723-24. There is little question that the government has a significant interest in conserving scarce judicial resources. SeeKedy v. A.W. Chesterton Co., 946 A.2d 1171, 1188 (R.I. 2008); Inre Thirteen Appeals, 56 F.3d at 301. *Page 13 
The Court harbors no illusions that the additional procedural safeguard of providing an opportunity for non-signatories to challenge the appropriateness of the 12% assessment will be time-consuming and difficult. See The Quasi-Class Action Method of ManagingMultidistrict Litigations, at 14 (stating that "the task of figuring out whose services are worth what is both extremely difficult as a theoretical matter and extremely messy as an empirical matter"). This is especially true in light of the fact that no one knows for sure how many additional plaintiffs represented by non-signatory attorneys will file cases in the future. In providing this procedural safeguard, the Court does not intend to preside over lengthy collateral litigation concerning attorneys' fees. See In re Nineteen Appeals, 982 F.2d 614 ("`[a] request for attorney's fees should not result in a second major litigation'") (quoting Hensley v. Eckhart, 461 U.S. 424, 437
(1983)). The Court, therefore, encourages the PSC and non-signatory attorneys to resolve their differences informally before resorting to this procedure. However, this procedure will certainly be available. The Court will also maintain a flexible approach to these hearings and may, based upon the circumstances, change when and how these hearings are conducted.
Accordingly, this Court concludes that allowing the objecting attorneys and other non-signatories who may join this litigation an opportunity to be heard at an appropriate time is an "additional procedural safeguard" necessary for the Proposed Order to comport with the requirements of due process.
 C The 12% Figure
The objecting attorneys' third contention is that the requested 12% withholding is two to three times higher than what is normal in similar litigation. The objecting *Page 14 
attorneys submit the affidavit of Harvard Law School professor William B. Rubenstein, a nationally recognized expert on complex civil litigation and class action law. Professor Rubenstein has collected information on assessment fees that federal MDL courts have imposed in 21 cases and has concluded that if this Court were to accept the PSC's proposed withholding, it would be the second-highest assessment rate in this sample. The data also demonstrate that a 4% to 6% assessment rate is the norm.
The PSC counters that the 12% assessment is well within the bounds of percentages awarded to attorneys for common benefit work in consolidated litigation. The PSC points to its own data containing examples in which the assessment percentage was above 12%. See, e.g., In reOrthopedic Bone Screw, MDL No. 1014, 2000 U.S. Dist. LEXIS 15980 (PTO 402) (E.D. Pa. 1996) (17% assessment); In re Copley Pharm.,Inc., 1 F.Supp. 2d 1407, 1415 (D. Wyo. 1998) (13% assessment).
The PSC also identifies several factors that it believes makes the 12% figure reasonable. The first is the relatively small size of this litigation compared with other MDLs. While still extremely costly and complex, the PSC points out that there are fewer potential settlements in this litigation to fund common benefit work than in most MDLs. Therefore, a higher assessment percentage is more appropriate here than in larger litigation, such as in the Vioxx litigation which encompasses upwards of 27,000 cases. The PSC also argues that the 12% assessment is fair because this PSC has been extremely inclusive in permitting attorneys to perform common benefit work. The more attorneys performing this work, the PSC argues, the higher the initial withholding so that everyone participating may be compensated. The PSC adds that it has extended an offer to the objecting attorneys to perform common benefit work. *Page 15 
In setting a reasonable percentage of fees to allocate to class or lead counsel in similar litigation, courts have considered factors, such as (1) the size of the fund created; (2) agreements reached by counsel involved; (3) the presence of objectors; (3) the skill and efficiency of the attorneys; (4) the complexity and duration of the litigation; (5) and the awards in similar cases, among others. See Manual for ComplexLitigation, § 14.121, p. 252-53; In re: Diet Drugs (Phentermine,Fenfluramine, Dexfenfluramine) Products Liability Litigation,2002 WL 32154197, 10 (E.D.Pa. 2002). At this stage, however, the 12% common benefit fund set-aside is merely "a holdback, not a levy." See In reZyprexa Products Liability Litigation, 467 F.Supp.2d 256, 267
(E.D.N.Y. 2006); Turner v. Murphy Oil, 422 F.Supp.2d 676, 681
(E.D.La. 2006) ("It is important to note that these are set-asides, not disbursements: no amounts are paid to attorneys from the set-aside fund until the attorneys demonstrate that they have worked for the common benefit.").
As discussed supra, the objecting attorneys will have an opportunity, at the appropriate time, to challenge the proposed 12% assessment, and this Court may exercise its discretion to modify that percentage downward, if warranted. In light of this fact, the Court finds that the withholding is not unreasonable. Moreover, the 12% figure is the result of extensive negotiation and reflects the consensus of plaintiffs' attorneys representing 94% of the approximately 1000 plaintiffs in this litigation. (PSC Mem. 9-11.) At this relatively early stage in the litigation, these attorneys are better positioned than the Court to determine what might be needed to compensate those working for the common benefit of all. Accordingly, given the substantial amount of discovery the PSC has thus far conducted, the scope of this litigation, the procedural safeguards in place for non-signatory attorneys, and the fact that the proposed percentage has been assented to by *Page 16 
the vast majority of plaintiffs' attorneys, the Court concludes that a 12% set-aside is fair and reasonable.
 Conclusion
For the reasons expressed in this Decision, the PSC's motion to enter the Proposed Order is granted. The Court shall provide non-signatory attorneys a fair opportunity to contest the 12% assessment at an appropriate time following withholdings in their cases. Counsel may submit the Proposed Order for entry.
[1] Under the version of the Proposed Order before this Court on March 24, 2009, when this matter was heard, subsection iv provided differently, stating that the assessment applied to "any case in which counsel receives any benefit from the effects of the Plaintiff's Steering Committee toward the common interests of this coordinated litigation." (emphasis added)
[2] The earlier version of the Proposed Order did not contain this provision.
[3] See Charles Silver Geoffrey Miller, The Quasi-ClassAction Method of Managing MultiDistrict Litigations: Problems and aProposal, New York University Law and Economics Working Papers 174 (2009).